



**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

F I L E D

dP  2-7-12

FEB 7 2012

**THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT**

United States of America ex rel.                    )

RODNEY CLEMONS R-47384                    )
(Full name and prison number)                    )
(Include name under which convicted)                    )
                                                                     )
PETITIONER                    )
                                                                     )
        vs.                    )
                                                                     )
MARCUS HARDY                    )
(Warden, Superintendent, or authorized                    )
person having custody of petitioner)                    )
                                                                     )
RESPONDENT, and                    )
                                                                     )
**(Fill in the following blank only if judgment                    )
attacked imposes a sentence to commence                    )
in the future)**                    )
                                                                     )
ATTORNEY GENERAL OF THE STATE OF                    )
                                                                     )
Illinois                    )
(State where judgment entered)                    )

12CV860
JUDGE COLEMAN
MAGISTRATE KEYS

Case Number of State Court Conviction:

00 CR 23332 (01)

### PETITION FOR WRIT OF HABEAS CORPUS – PERSON IN STATE CUSTODY

1. Name and location of court where conviction entered: Circuit Court of Cook County,

Criminal Division

2. Date of judgment of conviction: July 21, 2005

3. Offense(s) of which petitioner was convicted (list all counts with indictment numbers, if known)

First-Degree Murder, and Discharging a firearm

4. Sentence(s) imposed: 20 years for Murder, and 25 years for Discharging a firearm

5. What was your plea? (Check one)      (A) Not guilty      ( X )
                                                              (B) Guilty           (  )
                                                              (C) Nolo contendere  (  )

If you pleaded guilty to one count or indictment and not guilty to another count or indictment, give details:

Revised: 7/20/05

## PART I – TRIAL AND DIRECT REVIEW

1. Kind of trial: (Check one):  Jury ( X )  Judge only ( )

2. Did you testify at trial?  YES ( )  NO ( X )

3. Did you appeal from the conviction or the sentence imposed? YES (X) NO ( )

   (A)  If you appealed, give the

       (1)  Name of court:  Appellate Court, First Judicial District

       (2)  Result:  Conviction Affirmed

       (3)  Date of ruling:  March 31, 2008

       (4)  Issues raised:  Next page, Ineffective assistance of counsel. Petitioner did not recieve a Krankel Hearing.

   (B)  If you did not appeal, explain briefly why not:

4. Did you appeal, or seek leave to appeal, to the highest state court?  YES (X)  NO ( )

   (A)  If yes, give the

       (1)  Result:  Denied

       (2)  Date of ruling:  May 29, 2008

       (3)  Issues raised:  Next page, Ineffective Assistance of Counsel Petitioner did not recieve a Krankel Hearing.

   (B)  If no, why not:

5. Did you petition the United States Supreme Court for a writ of *certiorari*?  Yes ( )  No (X)

   If yes, give (A) date of petition: _____ (B) date *certiorari* was denied: _____

Revised: 7/20/05

RODNEY CLEMONS WAS DENIED DUE PROCESS AND EQUAL PROTEC-
TION OF LAW WHEN HIS FEDERAL AND STATE CONSTITUTIONAL
RIGHTS WAS VIOLATED UNDER THE FIFTH AND FOURTEENTH
AMENDMENT, WHEN THE APPELLATE AND SUPREME COURT INCORR-
ECTLY CONCLUDED THAT BECAUSE TRIAL COUNSEL ALLEGED HIS
OWN INEFFECTIVENESS IN A MOTION FOR A NEW TRIAL, THAT
DEFENDANT WAS THERE BY PRECLUDED FROM RAISING HIS OWN
PRO SE CLAIM OF INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Rodney Clemons raised a pro se post-trial claim of his trial counsel's ineffectiveness. Rodney maintained that counsel never informed him prior to trial of the incriminating oral statements that he allegedly made to Assistant State's Attorney Sears that were used against him at trial. (R.QQQ 39) Specifically Rodney alleged,"I had no knowledge of any statement in my discovery given to me by my defense counsel which is ineffective." (emphasis added)(R.QQQ 39) In fact, just prior to Rodney's claim, defense counsel had argued in a Motion For a New Trial that the State committed a discovery violation by not tendering those alleged incriminating statements in pre-trial discovery, but in fact, defense counsel had been tendered the statements prior to trial and had signed a receipt verifying just that. (R.QQQ 17-21, QQQ-27-28) In denying Rodney's Krankel claim that the trial court erred in failing to conduct a preliminary inquiry into Rodney's allegation of ineffectiveness, See People v. Krankel, 102 Ill. 2d 181 (1984), the appellate court found that because counsel had already alleged his own ineffectiveness in the Motion For a New Trial, Petitioner himself was precluded from raising counsel's ineffectiveness in his own pro se motion. (Order at 8) However, the appellate and Supreme court's holdings are inconsistent with

this court's holdings, and Petition For Habeas Corpus should be granted to resolve this conflict.

In Krankel the Illinois Supreme Court held that a trial court must conduct an initial inquiry into the factual basis for a defendant's pro se claim of ineffective assistance of counsel, regardless of the manner in which the pro se allegations arise. People v. Krankel, 102 Ill. 2d 181, 189 (1984); Where a defendant presents a pro se motion alleging ineffective assistance of counsel, the trial court must conduct an adequate inquiry to determine the factual basis of the claim. In petitioner's case at a minimum, the trial court should have made an inquiry so as to afford the defendant an opportunity to specify and support his complaints. Without an inquiry into the substance of the allegations, the trial court presumed them to be matters of trial strategy and summarily rejected them. The record in this case shows the trial court did not conduct an "adequate inquiry" into petitioner's claim of ineffective assistance because he conducted no inquiry at all. Certainly petitioner alleged that defense counsel was ineffective and that defense counsel never informed him prior to trial of the "Statement" in his discovery. (R.QQQ 39) This "statement" that Rodney referred to was the incriminating statement that he allegedly made to assistance state's attorney Sears after his arrest that his counsel had just discussed in the Motion For New Trial.

According to Sears, she interviewed petitioner at the police station after the shooting and petitioner stated "he didn't know what happened to the victim in the alley," and that "nobody could

have seen him on houston because there wasn't anybody who could have been close enough to see him. He told me that there were no house that anybody could have been in that were close enough to see his face." (R. LLL 186) According to Sears, neither she nor the other officers had previously told petitioner that the shooting took place in the alley on Houston. (R, LLL 186, LLL 194-95) Thus, as the state argued twice in its closing statements, the alleged statement to Sears was a backhanded admission and was incriminating because it tended to show that Rodney was present at the scene of the shooting. (R. MM18, MM55)

Defense counsel stated in his post-trial motion that he was unaware of the incriminating oral statement until the second day of trial and was not given the statement in discovery. (R. QQQ17-18) It was defense counsel's belief that the state committed a discovery error by not tending the statement four years prior during discovery, and had he known of the statement, he would have filed a pre-trial motion to suppress it.

Counsel also admitted that he was at fault for failing to object and request a continuance or mistrial when the statement took him by surprise in the middle of trial. (R. QQQ 20-21) (C2.-9-10) However, the state informed the court that the statement had in fact, been tendered to defense counsel prior to trial on August 27, 2004, and counsel signed a receipt showing that he had received it. (R. QQQ 26-27) (C.119)

Counsel was under the impression that he had never been tendered the incriminating oral statement, but in fact, he had possession of the oral statement prior to trial because he signed the

receipt saying that he received it on August 27, 2004, a year prior to trial. (C.119) For counsel to be unaware of the statement until the second day of trial, shows that in fact he had not been adequately prepared to defend petitioner's murder case.

Petitioner was denied his krankel claim base on the erroneous determination that because counsel admitted his own incompetance for failing to object for failing to object and request a continuance or mistrial when the incriminating statement took him by surprise in the middle of trial, that this precluded the defendant from raising an ineffectiveness claim in a pro se motion on other grounds. (Order at 8) Nothing in krankel, its progeny or any other case law precludes a defendant from asserting his own motion for ineffective assistance of counsel merely because counsel has previously alleged his own ineffectiveness. To the contrary, this federal court has long recongnized that counsel himself cannot be expected to effectively argue his own ineffectiveness because of the inherent conflict of interest that arises. It contravenes human nature to expect counsel to adequately argue his own ineffectiveness. in a posttrial motion as counsel did in petitioner's case. However, counsel did admit his own ineffectiveness. See Exhibit 1 Motion For New Trial. But that is not determinative of the issue of whether counsel was truly ineffective.

In evaluating a defendant's claim of ineffective assistance of counsel, the appropriate question is not whether counsel himself viewed his performance as deficient, but rather whether a reasonable competent attorney, in the same circumstances, would have so acted.

The "operative concern" for a reviewing court is whether the trial court "conducted an adequate inquiry into the defendant's pro se allegation" of ineffective assistance of counsel, not counsel's own allegations. No doubt, trial counsel may be ineffective for reasons that he or she may be aware of, but that the defendant himself would be in the best position to adequately assert his ineffectiveness in his own claim, under the two prong test of Strickland v. Washington 466 U.S. 668. (1984)

The petitioner interest is merely a matter of state procedual law. A state defendant has a legitimate expectation that he will not be deprived of his liberty only in accordance with state law. That liberty interest is one that the fourteenth Amendment preserv-against arbitrary deprivation by the state. An arbitrary disregard of a defendant's right to liberty is a denial of due process of law. Hicks v. Oklahoma 447 U.S. at 346, 65 L. Ed 2d at 180.

The petitioner's argument is that the Illinois Appellate and Supreme Court Repudiated State Law, when they treated petitioner differently from the defendant in People v. Krankel, 102 Ill. 2d 181, 189 (1984); In Krankel the defendant motioned the court, Stating he received ineffective assistance of counsel, and the Illinois Supreme Court held that a trial court must conduct an initial inquiry into the factual basis for a defendant's pro se claim of ineffective assistance of counsel, regardless of the manner in which the pro se allegations arise.

Petitioner verbally stated to the court that his trial counsel was ineffective. Petitioner maintained that counsel never informed him prior to trial of any incriminating statements that were

used against him at trial. (R. QQQ 39) In fact, just prior to petitioner's claim, defense counsel argued in a motion for a new trial his own ineffectiveness for failing to review the discovery report. The petitioner was unable to articulate his delivery of the aforementioned claim nevertheless the court understood what the petitioner was attempting to express. Had the petitioner been trained in the law and legal writing his conveyance of his counsels ineffectiveness would have been far more eloquent. For the Illinois courts to reject the petitioners claims of trial counsels ineffectiveness is tantamount to penalizing him for being unlearned in the law and it's proper application in instances that required proper articulation of legal terms and claims of U.S. Constitutional Violations.

The petitioner case is no different from People v. Krankel, and should of had an inquiry. Equal protection requires that the goverment deal with similarly situated individuals in a similar manner, See Eisenstadt v. Baird, 405 U.S. 438, 446-47, 92 S. CT. 10 29, 31 L Ed. 2d. 349 (1972).

**WHEREFORE,** the appellate and Supreme Court's determination that because counsel alleged his own ineffectiveness on particular grounds precluded petitioner from raising his own pro se issue's of ineffective assistance of counsel violated petitioner's due process and equal protection of law under the fifth and fourteenth Amendment. For all of the aforemention reasons above, petitioner ask this Honorable Court to Grant him Habeas Corpus Relief.

## PART II – COLLATERAL PROCEEDINGS

1.  With respect to this conviction or sentence, have you filed a post-conviction petition in state court?

    YES ( X )   NO ( )

    With respect to *each* post-conviction petition give the following information (use additional sheets if necessary):

    A. Name of court:   Circuit Court of Cook County, Criminal Division.

    B. Date of filing:   October 20, 2008

    C. Issues raised:   Post-Conviction Counsel, Argued Direct Appeal Counsel's Ineffectiveness for failing to raise Trial Court  Erred by refusing to amit prostitution evidence. **(More issue's NEXT PAGE)**

    D. Did you receive an evidentiary hearing on your petition?      YES ( )  NO (**X**)

    E. What was the court's ruling?   Summary Dismissal

    F. Date of court's ruling:   Dec 12, 2008, Reconsideration Denied, Jan 30, 2009

    G. Did you appeal from the ruling on your petition?      YES ( X )  NO ( )

    H. (a)   If yes, (1) what was the result?   Dismissal Affirmed

                 (2) date of decision:   May 13, 2011

        (b)   If no, explain briefly why not:   N/A

    I.  Did you appeal, or seek leave to appeal this decision to the highest state court?

    YES (**X**)   NO ( )

        (a)   If yes, (1) what was the result?   Denied

                 (2) date of decision:   November 30, 2011

        (b)   If no, explain briefly why not:   N/A

Revised: 7/20/05

2. With respect to this conviction or sentence, have you filed a petition in a **state court** using any other form of post-conviction procedure, such as *coram nobis* or habeas corpus?    YES ( )    NO (**X**)

    A. If yes, give the following information with respect to each proceeding (use separate sheets if necessary):

        1.    Nature of proceeding    _____

        2.    Date petition filed    _____

        3.    Ruling on the petition    _____

        4.    Date of ruling    _____

        5.    If you appealed, what was the ruling on appeal?    _____

        6.    Date of ruling on appeal    _____

        7.    If there was a further appeal, what was the ruling ?    _____

        8.    Date of ruling on appeal    _____

3. With respect to this conviction or sentence, have you filed a previous petition for habeas corpus in **federal court**?    YES ( )    NO (**X**)

    A. If yes, give name of court, case title and case number: _____ **N/A** _____

_____

    B. Did the court rule on your petition?  If so, state

        (1) Ruling:    _____ **N/A** _____

        (2)    Date:    _____

4. With respect to this conviction or sentence, are there legal proceedings pending in any court, other than this petition?    YES ( )    NO (**X**)

    If yes, explain: _____ **N/A** _____

_____

_____

_____

_____

_____

_____

_____

Revised:  7/20/05

PETITIONER WAS DENIED DUE PROCESS AND EQUAL PROTECTION
OF LAW, WHEN THE CIRCUIT COURT SUMMARILY DISMISSED HIS
PRO SE POST-CONVICTION AS FRIVOLOUS AND PATENTLY WITH-
OUT MERIT WHERE HIS CLAIM THAT APPELLATE COUNSEL WAS
INEFFECTIVE FOR FAILING TO ARGUE ON DIRECT APPEAL THAT
THE TRIAL COURT ERRED BY REFUSING TO ADMIT PROSTITUTION
EVIDENCE DURING HIS JURY TRIAL. THIS EVIDENCE HAD AN AR-
GUABLE BASIS IN BOTH LAW AND FACT, AS THE PROSTITUTION
EVIDENCE WAS INTEGRAL TO HIS DEFENSE AND DEFENSE COUNSEL
LAID THE PROPER FOUNDATION FOR THE ADMISSION OF THIS EV-
DENCE, WHICH VIOLATED PETITIONER, FIFTH, SIX, AND FOURT-
EENTH, ADMENDMENT, UNDER THE UNITED STATES CONSTITUTION

In petitioner's pro se post-conviction petition, he alleged
that his appellate counsel was ineffective for failing to argue on
direct appeal that the trial court erred by refusing to admit evi-
dence that Doris Smith was working as a prostitute on the night
she was shot. (PC. C58), an accused has the right to present a de-
fense, present witnesses to establish a defense and present his
version of the facts to the jury. See Washington v. Texas, 388 U.S
14, 19, 87 S. CT. 1920, 18 L. Ed. 2d 1019 (1967); See Hamling v.
U.S., 418 U.S. 87, 125, 94 S. CT. 2887, 41 L. Ed. 2d 590 (1974).

The post-conviction court, however, never considered the mer-
its of petitioner's claim. The court overlooked the fact that pet-
itioner raised this claim as an ineffective assistance of counsel
claim, and erroneously dismissed the claim on the basis that evid-
entiary are not proper in post-conviction petitions. (PCII. 270)
A proper evaluation of petitioner's claim shows that it had an
arguable basis in both law and fact. The trial court's refusal to
admit the prostitution evidence was reversible error. The evidence
was a major component of petitioner's theory of defense which was
that he had been misidentified as the shooter, where the shooter
was actually one of Doris's prostitution clients.

11

The evidence petitioner sought to admit substantiated petitioner's claim that Doris was a prostitute, and thus provided a reasonable basis for petitioner's theory of defense. See Taylor v. Illinois, 484 U.S. 400, 108 S. CT. 646, 98 L. Ed. 2d 798 (1988) criminal defendants have the right to present relevant, competent evidence and witnesses in their defense. The trial court, however, concluded that the proposed evidence was speculative which was erroneous because petitioner's proposed witness would have testified as to specific example of times where he paid Doris in exchange for sexual favors and witnessed her engage in similar transaction with other men. (KKK 103, LLL 215) As such, petitioner's claim that appellate counsel was ineffective for failing to raise it had an arguable basis in law and fact, and it was error for the post-conviction court to summarily dismiss his claim. The dismissal should of been reversed, and his cause remanded for further post-conviction proceedings.

A circuit court is to allow a post-conviction petition raising constitutional claims to proceed to second stage proceedings where petition has an arguable basis in both law and fact. People v. Cabrera, Ill. App. 3d (1st Dist. 2010)(No. 1-07-2922, February 16, 2010) citing People v. Hodges, 234 Ill. 2d 1, 11-12 (2009). This means that a first-stage petition can only be summarily dismissed as frivlous and patently without merit if it is based on a fanciful factual allegation or an indisputable meritless legal theory. Hodges at 16-17 (2009). A defendant who alleges that appellate counsel was ineffective for failing to raise an issue on appeal must allege facts demonstrating such a failure was objectively unreasonable

and that counsel's decision prejudiced the defendant. Cabrera, at 4. If the underlying issue is not meritorious, the defendant has suffered no prejudice. Id.

In the instant case, petitioner claimed that appellate counsel was ineffective for failing to argue on direct appeal that the court erred by refusing to admit the prostitution evidence. The post-conviction court, however, never considered the merits of petitioner's claim on the grounds that "evidentiary ruling are not properly reviewed by the trial court in a post-conviction. (PCII 270) The circuit and Appellate, and Supreme Court failed to recognize that petitioner raised this claim in the framework of ineffective assistance of appellate counsel, which is a proper post-conviction claim. The state court's did not consider the merits of petitioner's underlying claim of ineffective assistance appellate counsel had an arguable basis in law and fact, as the following analysis shows, and, therefore, should not have been dismissed as frivolous and patently without merit petitioner's underlying legal theory that the trial court erred by refusing to admit the prostitution evidence had an arguable basis in law. The prostitution evidence that counsel sought to admit was undeniably integral to petitioner's defense. Defense counsel's whole line of defense was that petitioner had been misidentified as the shooter by the state's eyewitnesses. Defense counsel's theory was that Doris was actually shot by one of her prostitution clients or drug dealers as part of a deal gone awry. (R.KKK 22-23);(R. MMM21. 29, 38-39) from the beginning of the case, defense counsel argued to the jury that "this was a case of mistaken identification," and that Doris was a

known drug user who often obtained drugs" on credit" and who" walked the streets" of the neighborhood. (R.KKK 22-23); (R.MMM21-29 38-39) Indeed, defense counsel's theory was substantiated in the sense that the evidence established that Doris was a known crack user who frequented crack houses and who regularly obtained drugs on "credit," meaning that she did not pay money for the drugs at the time she received them. (R.LLL-225-27)

Defense counsel sought to fully develop his theory that Doris was a prostitute shot by one of her "johns" defense through the testimony of Victor Latiker, who knew first hand that Doris was a prostitute. Victor would have testified that he had paid Doris money for sexual favors on more than one occasion. (R. KKK 92);(R. LLL. 214) Victor would have further testified that he witnessed the victim engage in similar behavior with other men, as he had been in crack houses with the victim when other men gave her money and went upstairs with her, and then came down after about five minutes. (R. LLL. 214) from Victor's testimony, it was reasonable to conclude that Doris was engaged in prostitution. Because defense counsel's whole misidentification theory depended upon showing that the Victim was a prostitute, the trial court's exclusion of the prostitution evidence denied petitioner his right to present evidence integral to his defense, and, thus constituted reversible error. Holmes v. South Corolina. 547 U.S 319 (2006)

The trial court refused to admit the evidence on the grounds that the prostitution evidence was mere speculation. (R. KKK 96. 102-104; LLL 218-224) This is not accurate. Victor's Proposed testimony was not speculative. He had firsthand knowledge that Doris

was a prostitute, because he had paid her for sex on more than one occasion, and he had witnessed her engage in prostitution like conduct by receiving money from other men and then disappearing with them while in a crack house. (R. KKK 92);(R. LLL 214) Doris's drug habit, which was established at trial, further supported the prostitution theory, as it was reasonable to infer that she engaged in prostitution to support her drug habit. Victor testified that the Victim regularly obtained drugs on "credit," meaning that she did not pay money at the time she received the drugs. This evidence was not speculative, but rather provided a reasonable basis from which to conclude that Doris was a prostitute.

In fact, there was evidence introduced at trial that the victim was working as a prostitute just before she was shot. Just prior to the shooting, at around 1:45 a.m., the victim was walking around the neighborhood wearing a leopard skin dress and a wig. Significantly, the police found an unwrapped condom in the pool of blood where her body had been. (R. LLL 150) These facts make it more likely than not that the victim was out on the streets because she was trying to attract clients for sex at the time she was shot. Defense counsel had a reasonable basis upon which to argue that the shooting was tied to the victims prostitution, and not to the petitioner.

Given that there was a reasonable foundation for the prostitution line of defense, petitioner should have been able to fully develop his theory. The only way he could do so was through Victor's testimony that Doris had engaged in acts of prostitution, and through the evidence that when Derric Clemons called the 911 to

report the shooting, he told the 911 dispatcher that he had just witnessed a "shooting at a prostitute."(R. KKK 92‑94); (PCII. 247 248 ) Derric must have observed some conduct that caused him to state that the victim was a prostitute, and petitioner should have at least been allowed to question him to determine why he made that statement.

It is reasonable to infer that the trial court's refusal to admit the prostitution evidence affected the jury's verdict. Although the state's case rested on the identification evidence this evidence was certainly not infallible. Out of the four witnesses, only Derric gave physical description of the shooter. But Derric was not consistent in his description, as he described the shooter in a couple of different ways. None of them matched petitioner. Derric first described the shooter as being 20 years old with an afro about 5'7," and wearing a light shirt. (R. KKK 108 -9) When the police arrived on the scene, Derric said the shooter was 20-25 years old and had on a light yellow shirt. (R. KKK 111) At time of the shooting, petitioner was 39 years old, 5'9", and had a very thick and clearly visable mustache and beard. See mug shot exhibit (R. KKK 1112, KKK 127) Derric never mentioned that the shooter had any facial hair. There were weaknesses with the other three eyewitnesses as well. None of them spoke to the police on the scene nor described the shooter at any other time prior to picking petitioner out of a linup. (R.KKK167, KKK190, LLL28, LLL 44) From their testimony, their ability to identify the shooter was questionable. Marie did not see the shooter's full face, only his

profile. (R. KKK 166) Both Marie Jackson and Natalie Johnson init-
ially though the shooting involved two men. (R. KKK 171, LLL 40)
Natalie, who initially gave the police a false name, only saw this
through cracked blinds. (R. LLL 28, LLL 36, LLL 48) Lionel Powe
had seen petitioner around the neighborhood prior to the shooting,
which could have influenced his lineup identification. (R.KKK192).

The weaknesses in the state's identification evidence left the
door open for the jury to conclude that the witnesses were mistaken
in their identification. Had petitioner been able to admit the pr-
ostitution evidence, it is probable that he could have persuaded
the jury that his misidentification theory was more credible than
the state's identification witnesses. As such, petitioner's claim
that his appellate counsel was ineffective for failing to raise
this issue is grounded in both law and fact and thus should not
have been summarily dismissed as frivolous and patently without
merit. Hodges, at 22. For all of these reasons, this Honorable
Court Should Grant Him Habeas Corpus Releif.

## PART III – PETITIONER'S CLAIMS

1.   State <u>briefly</u> every ground on which you claim that you are being held unlawfully.  Summarize <u>briefly</u> the <u>facts</u> supporting each ground.  You may attach additional pages stating additional grounds and supporting facts.  If you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds later.

**BEFORE PROCEEDING IN THE FEDERAL COURT, YOU MUST ORDINARILY FIRST EXHAUST YOUR STATE COURT REMEDIES WITH RESPECT TO EACH GROUND FOR RELIEF ASSERTED.**

(A)   Ground one   **Rodney Clemons**
Supporting facts (tell your story <u>briefly</u> without citing cases or law):

Petitioner was denied due process and qual protection of law,
when the trial court abused it's discretion in refusing to allow
the 911 tape to be heard, thereby denying petitioner a defense,
which violated his fifth and fourteenth amendment under the
United States Constitution

(B)   Ground two   **Rodney Clemons**
Supporting facts:

Trial counsel was ineffective for failing to investigate three
other witnesses who had information about the shooter, and
appellate counsel was ineffective for not raising trial counsel
ineffectiveness. Which violated Petitioner's Six amendment to the
United States Constitution.

Revised: 7/20/05

## (A)

**PETITIONER WAS DENIED DUE PROCESS AND EQUAL PROTECTION OF LAW, WHEN THE TRIAL COURT ABUSED IT'S DISCRETION IN REFUSING TO ALLOW THE 911 TAPE TO BE HEARD, THEREBY DENYING PETITIONER A DEFENSE, WHICH VIOLATED HIS FIFTH AND FOURTEENTH AMENDMENT UNDER THE UNITED STATES CONSTITUTION**

The State's case is predicated largely on eyewitness testimony There's no phsical evidence nor confession or any other evidence that would link the petitioner to the crime, therefore the 911 tapes are essential in that the descriptions given by the witnesses are contrary to the petitioner. This evidence is exculpatory and could be out come determative.

The single issue before this court is whether the trial court committed reversible error when it denied the petitioner the opportunity to play the 911 audio tapes recorded statements before the jury. See Holmes v. South Carolina, 547 U.S. 319 126 S. CT. 1727, 164 L. Ed. 2d 503 (2006) Stating whether based on due process or the compulsory process and confrontation clause of the Sixth Amendment, the federal constitution guarantees a meaningful opportunity to present a complete defense.

This right is violated by a rule which infringes on the ability to present a defense and which is arbitrary or disproportionate to its intended purpose.

Evidnece adduced at trial reveals the following information. Derric Clemmons testified at trial that he made a 911 call to the police upon observing two persons from a distance of 100 feet away at 1:54 a.m, from a second story rear attic to his house. His observation lasted a mere six seconds before losing sight of the man chasing the woman as they ran west on 81street along side an

adjacent house which blocked Mr. Clemmons view. During the "911" call to the police, Derric Clemmons described the offender as being male black, 20 years of age /5'7" Med/Afo/ light colored shirt/ dark pants. Within four minutes after the shooting occurred, officer Murtaugh arrived on the scene. The description of the offender given to officer Murtaugh by Mr. Clemmons was a black male, 20-25 years of age, 5'8" 160 pounds a light yellow or red shirt with dark pants black hair, and unknown complexion.

Later, while testifying before the Grand jury, Derric Clemmons stated that the offender was dark complexion wearing a white shirt. Petitioner was medium complexion. At no time during the 911 call to the police, nor four minutes later when Murtaugh appeared, was there any mention of the shooter's facial hair by Derric Clemmons. In fact, as evidence by petitioner's lineup photograph, the petitioner had both a mustache and beard. Additionally the evidence showed the defendant to be 39 years old at the time of his arrest twice the age of the shooter described by Derric Clemmons his initial description during his 911 call and the description given to officer Murtaugh at the scene showed the misidentification of the petitioner. At trial Derric stated the lighting was bright there was 250 watt bulb in the street lamp, which made it brighter then usual. "On the 911 tape , Derric stated it was "dark". Also there was language where he specifically referred to a prostitute being in the alley, and a drug dealer at that time. Derric said he shot a prostitute, See EXhibit 3 . The defense was told that in order to prove it he would have to bring in someone that had personal knowlededge of these act of drug and prostitution, counsel did that, See

Exhibit_4_,LLL,21, Defense called Buck Latiker to the stand to lay a foundation for playing the 911 tape recorded statements before the jurors made four minutes after the crime took place, the state objected, then the trial judge Abuse his discretion by not allowing the defense to introduce this evidence, finding that the tape would be speculation.

Petitioner's right to due process is essential, the right to a fair opportunity to defend against the state's accusations. Intrinsic to this constitutional guarantee are the rights to cross-examine and to present evidence. (U.S. Constitution. Amendment Five. Ill. Constitution, 1970, I. Sec.2).

The defense was able to cross examine the transcript of the 911 tape, but the original tape said something different. Petitioner was deprived of his basic rights when the trial court refused to play before the jury the 911 recorded statement Derric Clemmons made to the police, which was differrent from his testimony. This argument is grounded in the general evidentiary principle, that if one party introduce the remainder or so much thereof as is required to place that part originally offered in proper context so that a correct and true meaning is conveyed to the jury, See Fed. R.E. vid 106. To comply with "rule of completeness," the trial court should have allowed all that witness Derric Clemmons said, which pertained to the events at issue to be placed before the jury through cross-examination, and through petitioner's own witnesses. Defense counsel utilizing a transcript of the tape, but did not extensively cross-examine the witness. Counsel was precluded from bringing out certain aspects of the conversation.

The inquiry then becomes whether under the fact of this case,

21

the trial court should have allowed the defense to play the tape before the jury, because the transcripts was deleted.

In the instant case, petitioner's rights was violated because further details about the conversation could have effected the jury belief as to the witness truthfulness during the conversation. In fact, utilizing a transcript of the tape that did not clearly say what the tape offered. A tape recording of that conversation may be clearer and more persuasive than oral testimony covering exactly the same point in this case more, and thus Illinois courts has allowed juries to view photographs of crime victim even when witnesses have orally detailed the victims condition. There are courts that has allowed electronically recorded evidence to be played for the jury despite the introduction of identical oral testimony. People v. Robinson (1982). 104 Ill. App. 3d, 570, 578.

Under the Circumstances of this case the part of the statements excluded from evidence could have effected the juries assessment as to the crediblity at trial where he was untruthful when he made his first statement under oath. It was therefore an error to summarily refuse to let the defendant play the tape for the jury.

To shore up this argument the petitioner has to look no further than the U.S. Supreme courts decision in Taylor v. Illinois, 484 U.S. 400, 108 S.CT 646, 98 L. Ed. 2d 798 (1988) where the court determined that defendants have the right to present relevant, competent evidence and witnesses in their defense.

The petitioner contends that the trial court's abuse of discretion in refusing to admit the 911 audio tape recorded statement into evidence violated his fifth and fourteenth Amendment Under the United States Constitution. For all of the aforementioned reasons This petitioner ask this Honorable court to grant him Habeas Corpus Relief.

22

PETITIONER RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL ON DIRECT APPEAL WHERE COUNSEL FAILED TO ADEQUATELY REVEIW THE PETITIONER'S TRIAL RECORDS, WHERE THE COURT ABUSED IT'S DESCRETION BY REFUSING TO ALLOW THE 911 TAPE OF DERRIC CLEMMONS TO BE HEARD BY THE JURY. THEREBY DENYING PETITIONER A DEFENSE, WHICH VIOLATED HIS FIFITH AND FOURTEENTH AMENDMENT UNDER THE UNITED STATES CONSTITUTION.

The petitioner's issues were properly preserved for Appellate Reveiw and is meritorious in nature and it was unreasonable for Appellate Counsel not to raise such viable issues. Especially the motion for a new trial and in the record on Derect Appeal. In light of the fact that the abuse of the courts descretion violated petitioner's fifth and fourteenth Amendment by not allowing the jury to hear the 911 tape by the states main witness. No reasonable minded attorney would forgo any opportunity to gain relief for their client without the risk of being deemed incompitent, where in Holmes v. South Carolina, 547 U.S.319, 126 S.CT. 1727, 164 L. Ed. 2d 503 (2006), based on due process the Federal Constitution Guarantees a meaningful opportunity to present a complete defense. And for this reason this court should find that petitioner suffered adeprivation of his guaranteed Six Amendment Right to Effective Assistance of Counsel.

WHEREFORE, all of the aforemention reasons this petitioner ask this Honorable Court to Grant Him Habeas Corpus Relief.

**THE POST-CONVICTION APPELLATE COUNSEL WAS INEFFECTIVE FOR FAILING TO RAISE THE INEFFECTIVENESS OF THE DIRECT APPEAL COUNSEL FOR NOT RAISING THE 911 ISSUE, AND THE COURT'S ABUSE OF DESCRETION. ALSO THE POST-CONVICTION COUNSEL WAS INEFFECTIVE IN FAILING TO RAISE THE 911 TAPE ISSUE, WHERE PETITIONER ALLEGED THIS ISSUE IN HIS PETITION, WHICH VIO-LATED HIS SIX AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL, UNDER THE U.S. CONSTITUTION.**

In the instant case petitioner Appealed his post-conviction petition alleging that Stephanie A. Fisher rendered ineffective assistance of counsel by failing to argue any of the issues that were presented in the post-conviction petition. failing to raise these issues were objectively unreasonable and that for this fail-ing the conviction could have been reversed. U.S Constitution. Am-endment Six.

It is understood that counsel does not have to raise every conceivable issue on appeal, but counsel's appraisal of the meri-ts is patently wrong U.S.C.A Constitution. Amendment. Six.

Petitioner stated this 911 issue in his petition and Appella-te Counsel failed to argue the ineffectiveness of Direct Appeal Counsel in her petition which allowed the abuse of the court's descretion and tape to go unheard, which violated the clearly esta-blished U.S. Supreme Court Precedent in Strickland v. Washington, and violated the petitioners U.S. COnstitutional Right Under the Six Amendment.

## (B)

**TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO IN VESTIGA-TE THREE OTHER WITNESSES WHO HAD INFORMATION ABOUT THE SHOOTER, AND APPELLATE COUNSEL WAS INEFFECTIVE FOR NOT RAISING TRIAL COUNSEL INEFFECTIVENESS. WHICH VIOLATED PETITIONER"S SIX AMENDMENT TO THE UNITED STATES CONSTI-TUTION. SEE STRICKLAND V. WASHINGTON. 466 U.S. 668. 687 (1984)**

Rodney Clemons, Counsel had an obligation to conduct a subst-antial investigation into each of the plausible lines of defense "Strickland, 466 U.S. at 681, 104 S. CT. at 2061. This means that a reasonable inquiry into all plausible defenses be made. "Strick-land Ld., 466 U.S. AT 686, 104 S. CT. AT 2063. Counsel's action are usually based on informed strategic choices made by the defen-dant and on the discovery that is supplied.

Strickland spoke directly to counsel's duty to investigate:

Counsel has a duty to make reasonable investigation or to make a reasonable decision that makes particular investigation unnecessary, a particular decision not to investigate must be dir-ectly assessed for reasonableness to counsel's Judgments. Strickl-and, 466 U.S at 691.

In discussing the second prong of the Strickland Standard, the United States Supreme Court stated: The defendant must show that there is a reasonable probability that, but for counsel's unprofe-ssional errors, the result of the proceeding would have been diff-erent.

The relevant facts in petitioner's trial are as follows. Trial counsel was ineffective for failing to investigate three other witnesses who had information about the shooter. Annette Willingham, who lives two house from the corner and saw the whole

incident and could testify that it wasn't the petitioner. Doris Bell lived right on the very corner of houston, the investigating Detective's talked with her, but the state could not use her because she said the perpretrator was not the petitioner, Dontae Aston was shot on the same corner 20 minutes before Doris Smith and had information about the shooter, which fit the discription of the same man who shot Doris Smith. Attorney laws talked to Dontae and set up a meeting, but did not continue to investigate this witness. Dontae Aston was willing to testify for the petitioner but was never contacted again. Annette Willingham, Doris Bell, and petitioners alibi witness Andre Smith, are all on trial Counsel's Supplemental answer to discovery. See Exhibit 5 .

The failure to call a witness whose testimony would support an otherwise uncorroborated defense maybe ineffectiveness where counsel failed to present exculpatory evidence of which he is aware even if counsel's investigation was adequate. The failure to call witnesses constitutes ineffective assistance where the expected testimony was unequivocally exculpatory, and would have complemened counsel's strategy. See Strickland v. Washington, 466 U.S. 668 104 S. CT. 2052, 80 L.E.D. 2d 674 (1984). To determine if a defendant was denied effective assistance of counsel. A defendant must prove that his counsel's performance was deficient and that this deficiency prejudice him. Strickland, 466. U.S. at 687 104 S. CT. at 2064.

**TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO CALL DEFEN-
DANTS ALIBI WITNESS ANDRE SMITH, AFTER STATING TO THE
JURY THAT THE DEFENDANT HAD AN ALIBI.**

Petitioner received ineffective assistance of counsel, wherein defense counsel argued that defendant had been misidentified by the witnesses and that petitioner had an alibi. According to petitioner's alibi, Andre Smith saw defendant at 1:00 a.m on the morning of the shooting. He and the petitioner went serveral places and did not depart from each other until after 2:00 a.m. So it was impossible for petitioner to be the man that committed this crime. See Exhibit 6 Andre Smith Affidavit. Where the post-conviction petition alleged that trial counsel was ineffective for failing to present alibi witness, and the witness, affidavit indicated that defendant was not at the scene of the crime, the petitioner made a sufficient claim of constitutional error to require an evidentiary hearing. This federal court should grant Habeas Corpus Releif and Remand petitioner back for further Proceedings, Under Strickland v. Washington, 466 U.S. At 668, 104 S. CT. At 2052, 80 L.E.D. 2d 674 (1984), where the failure to call witnesses constitutes ineffective assistance where the expected testimony was unequivocally exclupatory, and would have complemented counsel"s strategy.

## PETITIONERS SIX AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WAS VIOLATED WHEN TRIAL COUNSEL FAILED TO ADEQUATELY PREPARE FOR TRIAL.

Petitioner was denied effective assistance of trial counsel when he failed to adequately examine articles of discovery such as police reports, and alleged statements placing petitioner at the murder seen. Counsel never informed petitioner prior to trial of the incriminating oral statements that he allegedly made to Assistance State's Attorney Sears that were used against him at trial. (R. QQQ 39) In fact, defense counsel had argued in a motion for a new trial that the state committed a discovery violation by not tendering those alleged incriminating statements in pretrial discovery, but in fact, defense counsel had been tendered the statements prior to trial, and signed a receipt verifying just that (R. QQQ 17-21, QQQ 27-28) According to state's Attorney Sears, she interviewed petitioner at the police station after the shooting and defendant stated that "he didn't know what happened to the victim in the alley," and that" nobody could have seen him, there wasn't anybody or any houses that someone could have been close enough to see his face. "(R. LLL 186) The morning of petitioner's arrest, priscilla king told defendant that Doris was shot in an alley on houston, and the tactical team drove petitioner to the crime scene to meet the leading Dectective, according to Sears, neither she nor the other officer had previously told petitioner that the shooting took place in the alley. State's Attorney Sears was asked under oath did she have any personal knowledge of what the detecive told petitioner and Sears answered No, See Exhibit

**7** line 1-14.

Thus, as the state argued twice in its closing, the alleged statement to Sears was a "backhanded admission and was incriminating because it tended to show that petitioner was present at the scene of the shooting. (R. MMM 18, MMM 55) counsel stated he was unaware of the incriminating statement until the second day of trial and was not given the statement in discovery. (R. QQQ 17-18) Counsel admitted that he was at fault for failing to object and request a continuance or mistrial when the statement took him by surprise in the middle of trial. TR. QQQ 20-21)(C2. 9910) Counsel signed a receipt saying that he received this discovery on August 27, 2004, a year prior to trial, (C. 119) For counsel to be unaware of the statement until the second day of trial, shows that in fact he had not been adquately prepared to defend petitioner's murder case. And because of trial counsel unprofessional errors, and not preparing to adequately represent the defendant where he did not examine police reports, or the discovery record adequately, petitioner was prejudiced by his counsel's substandard performance See Strickland, 466 U.S. at 690 (Stating that a court deciding an ineffectiveness claim must determine whether in light of all the circumstances, the identified acts or omissions were out side the wide range of professionally competent assistance); See Bell v Cone, 535 U.S 685, 697 (2002) (Applying Strickland Standard where specific attorney errors are challeged); See Rompilla v. Beard, 545 U.S 374, 380 (2002)(although counsel investigated serveral sources for mitigating evidence was still found ineffective). However, trial counsel alleged his own ineffectiveness in a motion

For New Trial. See Exhibit __1__. It "contravenes human nature to expect counsel to adequately argue his own ineffectiveness in a post trial motion" as counsel did here. However counsel's own admission of ineffectiveness is not determinative of the issue of whether counsel was truly ineffective, the law was designed to relieve a lawyer from having to argue his own ineffectiveness.

**THEREFORE**, Petitioner's post-conviction petition made a substantial showing that trial counsel was ineffective and his appellate counsel on both appeals direct and post-conviction was ineffective for not raising petitioner issue's that he preserved in his petition, See petitioner's appeals records. Trial counsel pevasive failures including the failure to present petitioner's alibi witness Andre Smith who would of only helped the defense case, and his failure to interview three other witnesses petitioner made known to him who had exculpatory evidence that could have exonerated petitioner, not to mention counsel failure to examine articles of discovery without any question or doubt constitutes ineffectiveness.

For all of the aforementioned reasons this defendant ask this Honorable Court To Grant Him Habeas Corpus Relief.

(C) Ground three __Rodney Clemons__
    Supporting facts:

The trial court committed reversable error (over trial counsels

objection) When the court allowed Natasha Smith the victims

Daughter to testify to Hearsay which violates the petitioners

fifth and fourteenth amendments to the Unitde States Constitution

(D) Ground four __Rodney clemons__
    Supporting facts:

The petitioner alleged his actual innocence and reasonable doubt

through Natasha Smith and Andre Smith affidavits, that were

never considered by the lower courts. As the only witnesses to have

seen petitioner while the event was taking place, this testimony is

far from cumulative, and violated his fifth and fourteenth

Amendment, Under The Unted States Constitution.

2. Have all grounds raised in this petition been presented to the highest court having jurisdiction?

    YES ( X )   NO ( )

3. If you answered "NO" to question (2), state briefly what grounds were not so presented and why not:

Revised: 7/20/05

(C)

**THE TRIAL COURT COMMITTED REVERSABLE ERROR (OVER TRIAL COUNSELS OBJECTION) WHEN THE COURT ALLOWED NATASHA SMITH THE VICTIMS DAUGHTER TO TESTIFY TO HEARSAY WHICH VIOLATES THE PETITIONERS FIFTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION**

The trial court committed reversible error when it allowed, over defense counsel objection, the victims daughter, Natasha Smith to testify to the following hearsay:

A. That Doris Smith stated she wanted him to leave her alone:

B. That Doris Smith said she wanted the defendant to stay away from her house:

C. And Natasha Smith stated her mother said she did not want defendant to call her anymore: See (KKK-28).

This testimony constituted hearsay, and violated the petitioner's right to confrontation as determined by the United States Supreme Court in Crawford v. Washington 541 U.S. 36, 158 L. Ed. 2d 177, 124 S. CT 1354 (2004). The Crawford decision held that in order to satisfy the confrontation clause of the sixth amendment, testimony statements of a witness who is not present at defendant's trial, are admissible only if (1) the declarant is unavailable and (2) the defendant had an opportunity to cross-examine the witness at the time of the statement. Crawford, 541 U.S. at 68, 158 L. Ed. at 203, 124 S. CT at 1374.

In the instant case, the testimony of Natasha Smith violated Crawford and, thus, defendant's confrontation rights. It is clear defense counsel did not have the opprotunity to cross-examine Doris Smith. Because of this Natasha Smith's testimony regarding her mother's alleged statements was inadmissible at defendant's trial

**under the** dictates of Crawford. The rule against hearsay allows a witness to testify only as to facts within their personal knowledge and not is to what others tell them. The basis for excluding evidence under the hearsay rule lies in the fact that an opportunity to ascertain the veracity of the testimony is absent.

This heasay testimony was highly prejudicial against the defendant because it suggested to the jury that Doris Smith and the petitioner had an adversarial relationship. which provided a motive for petitioner to harm her. This inference was exacerbated through other testimony at trial, where Natasha stated she told Detective Chatman this hearsay testimony. Wherein he stated under oath that the following statements was not in any of his reports and he new nothing about them.see exhibit __8__ ,Also,LLL154,155,156.

The above testimony heard at trial for the first time four years after the shooting of Doris Smith, painted the picture before the jury that petitioner was a desperate man bent on doing harm to the victim since she no longer wanted a relationship with him. This hearsay testimony violated the petitioners right's to confront a witness against him, See Crawford v. Washington, 541 U.S. 36, 158 L. Ed. 2d 177, 124 S. CT 1354 (2004). Also this testimony was highly prejudicial to petitioner since the state argued in closing arguments that the Petitioner couldn't accept Doris quiting him   The trial courts actions in over ruling trial counsels objections was contrary to clearly established U.S. Supreme Court precedent in Crawford v. Washington and violated the petitioners U.S. constitutional Rights Under the fifth and fourteenth

Amendments.

Petitioner ask this court to review the entire record and grant him Habeas Corpus Relief.

PETITIONER RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL
ON DIRECT APPEAL WHERE COUNSEL FAILED TO ADQUATELY RE-
VIEW THE PETITIONERS TRIAL RECORD AND POST TRIAL REC-
ORD WHERE IT WAS CLEAR THAT TRIAL COUNSEL OBJECTED
TO THE USE OF HEARSAY AND SUBSEQUENTLY FILED POST TRIAL
MOTION FOR A NEW TRIAL LARGELY BASED ON THE COURT ALL-
OWING USE OF HEARSAY TESTIMONY OF NATASHA SMITH STATING
WHAT THE VICTIM WAS ALLEGED TO HAVE SAID TO THE PETITI-
ONER WHICH VIOLATED THE PETITIONERS FIFTH AND FOURTEEN-
TH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES.
(SEE CRAWFORD V. WASHINGTON 541 U.S. 36, 158 L Ed. 2d
177, 124 S. CT. 1354 (2004)

Petitioner trial counsel properly preserved for Appellate
review the aforementioned issue and this issue is meritorious
in nature and it was unreasonable for Appellate Counsel not to
raise such a viable issue especially in light of the fact that
the United States Supreme Court had issued less than a year bef-
ore petitioners trial the Crawford decision. No reasonable minded
attorney would forgo any opportunity such as the issue before the
this court in gaining relief for their client without running
the risk of being deemed incompitent and for this reason this
court should find that the petitioner suffered a deprivation of
his guaranteed Six Amendment Right to effective Assistant of
counsel and grant him Habeas Corpus Relief. (For Post trial
motion See Exhibit  1  .

**THE POST-CONVICTION APPELLATE COUNSEL WAS INEFFECTIVE FOR FAILING TO RAISE THE INEFFECTIVENESS OF THE DIRECT APPEAL COUNSEL, FOR NOT RAISING THE CRAWFORD VIOLATION ALSO THE POST -CONVICTION COUNSEL WAS INEFFECTIVE IN FAILING TO RAISE THE CRAWFORD ISSUE ON APPEAL OF THE DENIAL OF THE POST-CONVICTION PETITION WHERE PETITIONER ALLEGED THIS ISSUE IN HIS PETITION, PETITIONERS SIX AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WAS VIOLATED.**

In the instant case, petitioner appealed his post-conviction petition alleging that there's a Crawford v. Washington violation, petitioner contends that Appellate Counsel Miss Fisher rendered ineffective assistance of counsel by failing to argue any of the issues that were preserved in the post-conviction petition. failing to raise these issues were objectively unreasonable and that for this failing, the conviction could have been reversed. U.S. Constitution, Amendment Six.

It is understood that counsel does not have to raise every conceivable issue on appeal, but counsel's appraisal of the merits is patently wrong U.S.CA. Constitution, Amendment Six.

Petitioner stated this crawford issue in his petition, and Appellate Counsel failed, to argue the ineffectiveness of derect appeal counsel in her petition, which allowed the hearsay testimony of Natasha Smith to go unheard, which violates the clearly Established United States Supreme Court Precedent in Crawford v. Washington 466 U.S. 668. 687 (1984), and violated the petitioners United States Constitutional Rights Under the Six Amendment.

THE PETITIONER ALLEGED HIS ACTUAL INNOCENCE AND REASON-
ABLE DOUBT THROUGH NATASHA SMITH AND ANDRE SMITH AFFID-
AVITS, THAT WERE NEVER CONSIDERED BY THE LOWER COURTS.
AS THE ONLY WITNESSES TO HAVE SEEN PETITIONER WHILE THE
EVENT WAS TAKING PLACE, THIS TESTIMONY IS FAR FROM CUM-
ULATIVE, AND VIOLATED HIS FIFTH AND FOURTEENTH AMENDMENT
UNDER THE UNITED STATES CONSTITUTION.

The affidavits is especially strong evidence of petitioner's
innocence. Andre Smith, petitioner's alibi witness is allowed to
speak for the first time, to testify to his presence with the
defendant the night of the crime. Mr Smith attached an affidavit
wherein he attested that he was with petitioner until 2:00 a.m,
on the morning of the shooting. (PC-C. 256) See Exhibit **6** , First
he saw defendant walking from a white van at four star liquor
store a little after 1:00 a.m, on the morning of the shooting.
Then he drove petitioner to his girlfriends house priscilla king,
defendant told Andre Smith he needed to meet someone on exchange,
who was not there. Andre attested that he parked his truck on
escanaba and the two of them walked one block over to Doris Smith
house. Petitioner went inside while Andre waited in front of the
building for a few minutes, petitioner returned, and they walked
back to priscilla house. They stayed there until after 2:00 a.m.
See Exhibit **6** . The court dismissed petitioner's claim stating
that defendant failed to submit an affidavit from Andre Smith
and failed to explain the significance of his testimony.

This ruling was wrong, petitioner attached 78 exhibits
including two affidavits which was sent to the clerks office on
October 20, 2008, titled exhibits A-Z, AA-ZZ, AAA-ZZZ, and AAAA.

On January 5, 2009 petitioner filed a motion for Reconsider-
ation of the dissmissal of his post-conviction. (PC.II. 275-276)
In his motion defendant attached both affidavits and that the
court should reconsider its dismissal of his post-conviction
petition because the affidavits of Natasha Smith and Andre Smith
entitled him to an evidentiary hearing. (PC.II. 278-279) When the
court denied this motion on January 30, the court Recharacterized
petitioner's motion as Leave To File a Successive Post-Conviction
petition, and denied him leave on the grounds that he failed to
show cause and prejudice. (PC.II. 283-287)

The post-conviction court found that petitioner could not
show cause to why he failed to identify Natasha in his initial
petition. (PC.II. 286-287) The post-conviction court was clearly
wrong, petitioner clearly state's the significance of Natasha
Smith affidavit in the initial petition on page 20-24, five pages
of Natasha Smith testimony. The court's over looked this in the
petition, which proves that the court did not thoroughly examine
petitioner's petition.

Petitioner alleged that Natasha Smith's testimony was coached
by the state. In support, Natasha attached an affidavit recanting
her trial testimony "that petitioner allegedly said someone was
going to die tonight" as he left her house (PC.C. 280) She attest-
ed that what he actually said was that there was a lot of shooting
outside, somebody is going to die and that he was very concerned
about her mom. She attested that the detective, however, changed
her statement so that it sound like petitioner had in a rage
against her mother that someone was going to die. (PC.C. 280) She

also attested that she told the detective that petitioner was wea-
ring green pants, a white tee-shirt with a black tee-shirt over it,
and that petitioner also had a mustache and long beard, but the
deteive did not write that down because it did not match the
perpretrator's discription at all. See Exhibit **9** , Natasha Smith
Affidavit. In People v. William Hernandez 288 Ill. App. 3d. 36.
697 N.E. 2d 1213, 232 Ill Dec. 283. When the Judge who hears the
post-conviction petition is different from the Judge who presided
at defendant's trial an evidentiary hearing on credibility and rel-
iability of the witness recantation generally should be had because
post-conviction Judge did not see or hear witness testify at trial.
Natasha Smith was severly impeached during her testimony by detec-
tive Chatman. Where she had not disclosed the following testimony.
(1) That her mother told her she wanted petitioner to stay away,
(2) Petitioner had been calling 3-5 times a day. (3) Petitioner
was banging on her door, (4) Petitioner said he would give Doris
his check; (5) Also petitioner was walking up and down the stairs
pacing. That the above testimony heard at trial for the first time
four years after the shooting was a recent fabrication by Natasha
Smith. See (PC.page 20-24) People v. Garcia 298 Ill Dec. 300, Sta-
ting when a criminal defendant supports a post-conviction petition
with evidence that a key witness, out of court and under oath, said
that she lied at trial the court must hold an evidentiary hearing
to determine wether the witness committed perjury at trial.

The States case is predicated largely on eyewitness testimony,
there's no phsical evidence nor confession or any other evidence
that would link the petitioner to the crime, out of the four

witnesses Derric Clemmons was the only one that gave a discription
of the shooter. But Derric was not consistent in his discription,
and none of them matched the petitioner, he first described the
shooter as being 20 years old with an afro, 5'7", and wearing a
light shirt. (KKK 108-9) When the police arrived on the scene,
Derric said the shooter was 20-25 years old and had on a light
yellow shirt. (R. KKK 111) At the time of the shooting, petitioner
was 39 years old, 5'9", and had a mustache and beard. (R-KKK 112,
KKK-127) There were weaknesses with the other three witnesses as
well none of them spoke to the police on the scene nor described
the shooter at any other time prior to picking petitioner out of
a lineup. Their testimony was questionable. Marie Jackson did not
see the shooter's full face, only his profile. (R-KKK 166) Both
Marie Jackson and Natalie Johnson initially thought the shooting
involved two men. (R.KKK 171, LLL 40) Natalie, who initially gave
the police a false name, only saw the shooting through cracked
blinds. (R.LLL 28, LLL 36, LLL 48) Lionel Powe claim he had seen
petitioner around the neighborhood which could have influenced
his lineup identification. Also he was taking three medication for
depression, and drinking at the time that the crime was committed.
The weaknesses in the State's identification evidence left the do
door open for the jury to conclude that the witnesses were mistak-
en in their identification.

Had the trial court considered the affidavits this case boils
down to a big reasonable doubt with no evidence See Jackson v.
Virginia, 443 U.S. 307, 99 S. CT. 2781, 61 L. Ed. 560 (1979) A
state prisoner is entitled to federal habeas corpus relief if,

based upon the evidence adduced at trial, no rational trier of fact could have found proof of guilt beyond a reasonable doubt. Hervera v. Collins, 506 U.S 390, 113 S. CT. 853, 122 L. Ed 203 (1993) Stating claims of "Actual innocence" is relevant not as an independant constitutional claim, but only as a basis for obtaining review of another constitutional violation.

The affidavits by Andre Smith and Natasha Smith places the petitioner at Doris Smith house talking with her Daughter Natasha when the shooting first started at 1:30 a.m, and 1:35 a.m. The family was told this started at 1:55 a.m by the Detectives, the witnesses testified to the correct time at trial, both Marie Jackson and Natalie Johnson testified under oath that the shooting started at 1:30 a.m and at the grand jury also. See Jackson V. Virginia 443 U.S. 307 318-19 Stating when a court reviews the sufficiency of the evidence, the relevant question is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyound a reasonable doubt.

WHEREFORE, by the state courts determination that Andre Smith and Natasha Smith affidavits did not require a hearing, violated petitioner's Due Process And Equal Protection Of Law Under The Fifth And Fourteenth Amendment: For all the aforemention reasons above petitioner ask this Honorable Court To Reverse And Remand This Cause Back For A New Trial.

THE POST-CONVICTION APPELLATE COUNSEL WAS INEFFECTIVE FOR FAILING TO RAISE THE INEFFECTIVENESS OF THE DIRECT APPEAL COUNSEL, FOR NOT RAISING THE REASONABLE DOUBT ISSUE, WHEN IT WAS THE FIRST ISSUE IN THE PETITION, UNDER INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL. PETITIONERS SIX AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNEL WAS VIOLATED, UNDER THE UNITED STATES CONSTITUTION.

In the instant case petitioner appealed his post-conviction petition alleging that he received ineffective assistance of appellate counsel for failing to argue petitioner's issue's that were ripe for appellate review and that failing to raise these issues were objectively unreasonable and that for this failing, the conviction could have been reversed. U.S. Const. Amend. Six, petitioner states Natasha Smith and Andre Smith affidavit and the reasonable doubt issue was in the petition to be argued and appellate counsel failed to argue these issues which allowed both issues to go unheard, which violated petitioner's Six Amendment, under the United State's Constitution.

## PART IIII-PETITIONER'S CLAIMS

In the instant case, petitioner never forfeited any issue's. The Appellate Judge stated in his order that he had petitioner's Post-Conviction, and Reconsideration Motion in front of him. Petitioner filed a Motion For Rehearing asking the court to reconsider it's ruling, also petitioner ask the court what happen to the Motion For Supplemental Brief Citing Additional Authority, that was filed on April 1, 2010. See Exhibit 13. This order was entered on April 14, 2010 taken with the case. See Attaches order, Exhibit 14. Also petitioner filed a reply brief, this order was entered on December 1, 2010 See exhibit 16. Petitioner prepared these briefs because his post-conviction attorney Stephanie A. Fisher failed to do so, she chose one issue out of the hole appeal, in these situation the issue's in petitioner's appeal would of been waived without being ruled on at the appeal stages the lower court's excepted both of petitioner's motions then waited a year after petitioner ask the court to explain it's rulings then on the court's own motion, they denied both order stating they were never permitted to be filed, See Exhibit 17. Petitionehas sent this court proof that these motions was excepted, and now the court's failed to discuss the significants of the motion at all.

Petitioner did not forfeit anything, the right to due process is essential. The right to a far opportunity to defend against the state's accusations. (Chamber's V. Mississippi (1973), 410 U.S. 284, 35 L Ed, 2d 297, 308, 93 S, Ct. 1038. 1045).

## PART IV – REPRESENTATION

Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

(A) At preliminary hearing **Public Defender**

(B) At arraignment and plea **Public Defender**

(C) At trial **William H. Law, 134 North LaSalle Suit 1120 Chicago, Il. 60601**

(D) At sentencing **William H. Laws 132 North LaSalle Suit 1120 Chicago Il.**

(E) On appeal **Jessica D. Pamon-Asst. Appellate Defebder, 203, North LaSalle**

(F) In any post-conviction proceeding **Stephanie A. Fisher, 203 North LaSalle App. Def.**

(G) Other (state): **Leave To Appeal To the Supreme Court, Pro-se**

## PART V – FUTURE SENTENCE

Do you have any future sentence to serve following the sentence imposed by this conviction?

YES ( ) NO (**X**)

Name and location of the court which imposed the sentence: **NoNe**

Date and length of sentence to be served in the future **NoNe**

WHEREFORE, petitioner prays that the court grant petitioner all relief to which he may be entitled in this proceeding.

Signed on: _1/24/2012_
(Date)

_____
Signature of attorney (if any)

**I declare under penalty of perjury that the foregoing is true and correct.**

_Rodney Clemons_
(Signature of petitioner)

**R-47384**
(I.D. Number)

**P.O.Box 112, Stateville Corr. Center**
(Address)

Revised: 7/20/05

**EXHIBITS 1-17**

**EXHIBITS 1-17**          **EXHIBITS 1-17**          **EXHIBITS 1-17**

**EXHIBITS 1-17**

## INDEX

EXHIBIT- 1 Motion For New Trial

EXHIBIT-2 APPELLATE COURT ORDER FOR DIRECT APPEAL

EXHIBIT-3 911 EMERGENCY CALL PRINT OUT

EXHIBIT-4 LLL-214-transcript

EXHIBIT-5 SUPPLEMENTAL ANSWER TO DISCOVERY

EXHIBIT 6 ANDRE SMITH AFFIDAVIT

EXHIBIT-7 LLL-194 transcript

EXHIBIT-8 LLL-153 Transcript

EXHIBIT-9 Natasha Smith Affidavit

EXHIBIT- 10 CIRCUIT COURT ORDER FOR POST-CONVICTION

EXHIBIT-11 DENIAL OF RECONSIDERATION MOTION

EXHIBIT-12 APPELLATE COURT ORDER FOR POST-CONVICTION

EXHIBIT-13 SUPPLEMENTAL BRIEF CITING ADDITIONAL AUTHORITY

EXHIBIT-14 SUPPLEMENTAL BRIEF ORDER EXCEPTING PETITIONER"S BRIEF

EXHIBIT-15 REPLY BRIEF AND ARGUMENTS

EXHIBIT-16 REPLY BRIEF ORDER

EXHIBIT-17 ON THE COURT'S OWN MOTION ORDER CITING ALL APPEALS