**EXHIBIT 10**

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CRIMINAL DIVISION

PEOPLE OF THE STATE OF ILLINOIS,   )
                                   )

    Plaintiff-Respondent,    )



                                     Post-Conviction

          v.                              01-CR- 23332-01

RODNEY CLEMONS,

    Defendant-Petitioner.

---

### ORDER

    Petitioner, Rodney Clemons, seeks post-conviction relief from the judgment of conviction entered against him on September 16, 2005. Following a jury trial, petitioner was found guilty of committing one count of first degree murder in violation of the Illinois Criminal Code. 720 ILCS 5/9-1(A)(1) (West 2005). Petitioner was subsequently sentenced to twenty years imprisonment for the murder and a consecutive twenty-five year sentence for personally discharging the firearm.

    As grounds for post-conviction relief, petitioner claims: (1) he received ineffective assistance of trial counsel who failed to: (a) investigate and interview witnesses; (b) consult with petitioner regarding trial strategy; (c) discuss police reports and take petitioner's phone calls; (d) contest petitioner's illegal arrest and statement; (e) object to certain trial testimony; (2) he received ineffective assistance of appellate counsel who failed to: (a) raise trial counsel's ineffectiveness; (b) argue that petitioner was not proven guilty beyond a reasonable doubt; (3) the trial court erred by not admitting the 911 audiotapes of an eyewitness; and (4) his sentence was excessive.

exhibit 10

## BACKGROUND

Petitioner's conviction stems from the events of August 26, 2001. On that date, at about 1:20 a.m., petitioner arrived at his girlfriend Doris Smith's, house demanding to know where she was. After learning she was not at home, he ran from the house in a rage yelling, "[s]omebody is going to die tonight." Approximately twenty-five minutes later, four eyewitnesses heard gunshots, saw petitioner chasing Smith out of an alley and shoot Smith, and saw Smith fall to the ground. Each of the four witnesses identified petitioner in a police lineup and in court. Deputy medical examiner Michel Humilier testified Smith died from multiple gunshot wounds and the manner of death was homicide.

ASA Bronwyn Sears testified that, after advising petitioner of his *Miranda* rights, she interviewed him and he denied having anything to do with Smith's murder. Petitioner told Sears he did not know what happened to Smith in the alley, although neither Sears not the police had mentioned the alley to him. Petitioner further told Sears that no one could have seen him on the street because there wasn't anyone there who would have been close enough to see his face, and anyone who claimed they saw him in the alley was lying. The jury found petitioner guilty of first degree murder and found that he personally discharged the firearm that caused Smith's death.

## PROCEDURAL HISTORY

A direct appeal was taken to the Illinois Appellate Court, First Judicial District, wherein petitioner contended: (1) the trial court erred when it failed to conduct an inquiry into petitioner's *pro se* allegations that trial counsel rendered ineffective assistance; (2) his mittimus should be corrected to reflect the proper number of days' credit for time served in custody. On March 31, 2008, petitioner's conviction was affirmed and the

EXHIBIT 10

mittimus was corrected. *People v. Rodney Clemons*, No. 1-05-3290 (unpublished order under Supreme Court Rule 23). The record does not indicate whether petitioner filed leave to appeal to the Illinois Supreme Court or the United States Supreme Court.

## ANALYSIS

The instant petition was filed on October 20, 2008, and is before the court for an initial determination of its legal sufficiency pursuant to Section 2.1 of the Post-Conviction Hearing Act ("the Act"). 725 ILCS 5/122-2.1 (West 2002); *People v. Holliday*, 313 Ill. App. 3d 1046, 1048 (5th Dist. 2000). A post-conviction petition is a collateral attack on a prior conviction, *People v. Simms*, 192 Ill. 2d 348, 359 (2000), and is limited to constitutional issues which were not and could not have been raised on direct appeal. *People v. King*, 192 Ill. 2d 189, 192-93 (2000). Where the petitioner raises non-meritorious claims, the court may summarily dismiss them. *People v. Richardson,* 189 Ill. 2d 401, 408 (2000).

Under the Act, a petitioner enjoys no entitlement to an evidentiary hearing. *People v. Cloutier*, 191 Ill. 2d 392, 397 (2000). In order to obtain a hearing, the petitioner has "to make a substantial showing of a violation of a constitutional right." *People v. Johnson*, 191 Ill. 2d 257, 268 (2000). However, a *pro se* post-conviction petition may be summarily dismissed as frivolous or patently without merit during the first stage of post-conviction review unless the allegations in the petition, taken as true and liberally construed, present the "gist" of a valid constitutional claim. *People v. Edwards*, 197 Ill. 2d 239, 244 (2001).

EXHIBIT 10

## EFFECTIVE ASSISTANCE OF TRIAL COUNSEL

As grounds for post-conviction relief, petitioner claims he received ineffective assistance of trial counsel who failed to: (1) investigate and interview witnesses; (2) consult with petitioner regarding trial strategy; (3) discuss police reports and take petitioner's phone calls; (4) contest petitioner's illegal arrest and statement; and (5) object to certain trial testimony.

In examining petitioner's claims of ineffective assistance of counsel, this court follows the two-pronged test of *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under this standard, petitioner must show that counsel's representation fell below an objective standard of reasonableness, and that but for this deficiency, there is a reasonable probability that counsel's performance was prejudicial to the defense. *People v. Hickey*, 204 Ill. 2d 585, 613 (2001). "Prejudice exists when 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *People v. Erickson*, 183 Ill. 2d 213, 224 (1998) (citations omitted). A petitioner's failure to make the requisite showing of either deficient performance or sufficient prejudice defeats a claim of ineffectiveness. *People v. Morgan*, 187 Ill. 2d 500, 529-30 (1999).

Significantly, effective assistance of counsel in a constitutional sense means competent, not perfect, representation. *People v. Easley*, 192 Ill. 2d 307, 344 (2000). Notably, courts indulge in the strong presumption that counsel's performance fell within a wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 690 (2001). Moreover, "the fact that another attorney might have pursued a different strategy is not a

4

EXHIBIT 10

factor in the competency determination." *People v. Palmer*, 162 Ill. 2d 465, 476 (1994)

(citing *People v. Hillenbrand*, 121 Ill. 2d 537, 548 (1988)).

Further, counsel's strategic decisions will not be second-guessed. Indeed, to ruminate over the wisdom of counsel's advice is precisely the kind of retrospection proscribed by *Strickland* and its progeny. *See Strickland*, 466 U.S. at 689 ("[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight"); *see also People v. Fuller*, 205 Ill. 2d 308, 331 (2002) (issues of trial strategy must be viewed, not in hindsight, but from the time of counsel's conduct, and with great deference accorded counsel's decisions).

**Failure to Call Witnesses**

Petitioner alleges trial counsel was incompetent for failing to investigate or call certain witnesses: Andrea Smith, Annette Willingham, Doris Bell, and Dante Auston. "In general, whether to call a particular witness is a matter of trial strategy." *People v. Flores*, 128 Ill. 2d 66, 85-6 (1989) (citations omitted). Such a claim cannot form the basis for a claim of ineffective assistance of counsel unless the trial strategy is so unsound that counsel can be said to have entirely failed to conduct any meaningful adversarial testing of the State's prosecution. *People v. Jones*, 323 Ill. App. 3d 451, 457 (1st Dist. 2001). "When the defendant attacks the competency of his counsel for failing to call or contact witnesses, he must attach to his post-conviction petition affidavits showing the potential testimony of such witnesses and explain the significance of their testimony." *People v. Roberts*, 318 Ill. App. 3d 719, 723 (1st Dist. 2000). In the instant matter, petitioner has not made the requisite factual showing. Petitioner has failed to submit an affidavit from any of these potential witnesses. Additionally, petitioner has failed to explain the

**EXHIBIT 10**

significance of their testimony. Therefore, his claim that counsel was ineffective for failing to contact the proposed witnesses must fail.

**Failure to Investigate or Prepare for Trial**

Petitioner alleges trial counsel failed to properly investigate his case. Defense counsel's failure to adequately prepare for trial or to conduct adequate investigations may support an ineffectiveness claim. *People v. Witherspoon*, 55 Ill. 2d 18, 21 (1973); *People v. Coleman*, 267 Ill. App. 3d 895, 900 (1st Dist. 1994). However, "a particular decision not to investigate must be directly assessed for reasonableness in all circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland v. Washington*, 466 U.S. 668, 691 (1984). Indeed, "to prevail on a claim of ineffective assistance for failure to investigate, petitioner must show that substantial prejudice resulted and that there is a reasonable probability the final result would have been different had counsel properly investigated." *People v. Rush*, 294 Ill. App. 3d 334, 342-43 (5th Dist. 1998). In this case, petitioner claims trial counsel did not investigate his case because counsel did not call the above-mentioned witnesses (from whom petitioner attaches no affidavits.) As such, this unsupported claim cannot have prejudiced petitioner and must be denied.

**Failure to File Motion to Quash Arrest and Suppress Statement**

Petitioner alleges trial counsel failed to contest petitioner's illegal arrest and subsequent statement denying involvement to the police. However, petitioner did not make a statement confessing to the authorities. Decisions to file motions to suppress or quash involve matters of trial strategy and therefore are not challengeable as ineffective assistance of counsel. *See People v. Atkins*, 161 Ill. App. 3d 600, 609 (1st Dist. 1987);

*People v. Johnson*, 143 Ill. App. 3d 34 (1986). Thus, we reject this contention. Moreover, we are satisfied that the evidence supports the conclusion that the defendant's arrest was lawful. This meritless claims is dismissed

As for petitioner's statement, petitioner has given no reasons in his petition as to what would have rendered it involuntary forming the basis for the trial court to suppress it. Petitioner merely makes the blanket allegation that ASA Sears fabricated his interview with her which took place at the police station, thereby violating his constitutional rights thorough her perjured testimony. Petitioner does not indicate what was fabricated or specify what he did state in the interview.

It is axiomatic that a conviction based upon false testimony offends notions of fundamental fairness. *People v. Jimerson*, 166 Ill. 2d 211, 223 (1995); *Giglio v. United States*, 405 U.S. 150, 153 (1972). Perjury has been aptly characterized as "the mortal enemy of justice." *People v. Shannon*, 28 Ill. App. 3d 873, 878 (1st Dist. 1975). Significantly, to establish a violation of due process, the prosecutor need not have known that the testimony was false; it is enough that there was knowledge on the part of representatives or agents of the prosecution. *People v. Cihlar*, 111 Ill. 2d 212, 218-19, (1986).

However, where the claims of perjury are merely conclusory in nature and not supported by further allegations of specific facts, the petition may be dismissed without an evidentiary hearing. *People v. Ashley*, 34 Ill. 2d 402, 411 (1966). Hence, it is incumbent on petitioner to substantiate his allegations with specific facts which establish the falsity of the trial testimony. *People v. Martin*, 46 Ill. 2d 565, 568 (1970). In the context of a conviction claimed to have been obtained through the use of perjured

EXH-10

testimony, the petition must specify the nature of the evidence of perjury, its source, and its availability. *People v. Mitchell*, 123 Ill. App. 3d 868, 878-79 (1st Dist. 1984).

In the instant matter, petitioner has failed to substantiate his allegation that ASA Sears gave perjured testimony. Petitioner has provided no supporting documentation whatsoever. Petitioner's claim of perjury is, thus, nothing more than a bald conclusion. As such, it does not warrant relief.

Even where the petitioner supports his claim of perjury with specific facts, his conviction will only be set aside where he establishes that the prosecutors knew, or should have known, of the perjured testimony. *People v. Brown*, 169 Ill. 2d 94 (1996). Here, petitioner has failed to demonstrate that the prosecutors knew, or should have known, of the falsity of the testimony of the witness. Indeed, nothing in his petition remotely points to the State's knowing use of perjury. Only a knowing use of perjured testimony will constitute a constitutional violation. *People v. Olinger*, 176 Ill. 2d 326, 345 (1997); *United States v. Bagley*, 473 U.S. 667, 678-80 (1985).

Moreover, petitioner is also required to show that there is a reasonable likelihood that the false testimony could have affected the court's finding of guilt. *Olinger*, 176 Ill. 2d at 345. Here, the court is unable to conclude that ASA Sears' testimony likely affected the outcome. The evidence against petitioner, consisting of four eyewitnesses to the crime, was substantial. Even if the court were to assume that the State knowingly used the alleged false testimony of ASA Sears, the evidence at trial still supports petitioner's conviction. This frivolous claim is dismissed.

## Failure to Make Objections

Petitioner contends trial counsel was ineffective for failing to object to certain trial testimony. Specifically, petitioner alleges Natasha Smith's testimony was coached. Derric Clemons' testimony was unreliable since he only saw the offender for six seconds. Marie Jackson did not see the shooter's face. Lionel Powe was on medication. Natalie Johnson testified it was dark and therefore couldn't have seen anything. The medical examiner testified the shot was not at close range while eyewitnesses testified the opposite.

The decision of whether or not to object to trial testimony or closing arguments is generally a matter of trial strategy. *People v. Evans*, 209 Ill. 2d 194, 221 (2004). As such, it will be left undisturbed. *See People v. Childress*, 191 Ill. 2d 168, 177 (2000) (trial counsel's strategic choices are virtually unchallengeable). Indeed, "[t]he evaluation of counsel's conduct cannot properly extend into areas involving the exercise of professional judgment, discretion or trial tactics." *People v. Franklin*, 135 Ill. 2d 78, 118-19 (1990) (citations omitted). Furthermore, trial counsel raised all these issues in his post-trial motion for a new trial which the trial court denied. These baseless allegations are dismissed.

## Unsupported Allegations Regarding Trial Counsel

Petitioner alleges trial counsel did not consult with him regarding trial strategy. However, trial counsel has the discretion to decide upon trial strategy without consulting with petitioner. Specifically, petitioner's allegations that trial counsel was ineffective for failing to discuss police reports and ignoring petitioner's phone calls are entirely conclusory. The petition is devoid of any facts supporting petitioner's contention(s). Bald, conclusory allegations, such as these, will not prevail on post-conviction review. *See*

*People v. Maury*, 287 Ill. App. 3d 77, 80, (1st Dist. 1997) (summarily dismissing

petitioner's post-conviction claims because no factual support). Indeed,

> while ineffective assistance of counsel may be an
> appropriate subject of a petition for post-conviction relief,
> the petition must contain more than a catalogue of failures
> on the part of defense counsel; it must contain specific
> factual allegations which, when supported by evidence, will
> show substantial prejudice to defendant's rights and from
> which it can be established that the outcome of the trial, had
> those failures not occurred, would probably been different.

*People v. Tompkins*, 176 Ill. App. 3d 245, 248 (3rd Dist. 1988) (citations omitted). These

frivolous claims are denied.

## EFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

Petitioner claims appellate counsel was ineffective for failing to raise various

claims on direct appeal, among them trial counsel's ineffectiveness and reasonable doubt.

It is axiomatic that a criminal petitioner is guaranteed the effective assistance of counsel

on appeal. *Evitts v. Lucey*, 469 U.S. 387, 396-97 (1985). However, effective assistance in

a constitutional sense means competent, not perfect, representation. *People v. Easley*, 192

Ill. 2d 307, 344 (2000). In assessing claims of ineffective assistance of appellate counsel,

the court follows the two-pronged test of *Strickland v. Washington,* 466 U.S. 668, 687

(1984). Under this standard, the petitioner must show that counsel's representation fell

below an objective standard of reasonableness, and that, but for this deficiency, there is a

reasonable probability that counsel's performance was prejudicial to the defense. *People*

*v. Hickey*, 204 Ill. 2d 585, 613 (2001).

To succeed on a claim of ineffective assistance of appellate counsel, petitioner

must show that the failure to raise a particular issue was objectively unreasonable and that

his appeal was prejudiced by the omission. *People v. Williams*, 209 Ill. 2d 227, 243 (2004). "Appellate counsel is not obligated to brief every conceivable issue on appeal, and it is not incompetence of counsel to refrain from raising issues which, in his or her judgment, are without merit, unless counsel's appraisal of the merits is patently wrong." *People v. Easley*, 192 Ill. 2d 307, 329 (2000). Thus, petitioner has not suffered prejudice from appellate counsel's decision not to raise certain issues on appeal unless such issues were meritorious. *Id*. at 329.

Here, the court declines to deem "patently erroneous" appellate counsel's assessment of the record and decision not to raise those issues now asserted by petitioner. Moreover, petitioner has failed to establish that had appellate counsel raised any or all of the above listed issues, his conviction or sentence would have been reversed. "A petitioner's failure to make the requisite showing of either deficient performance or sufficient prejudice defeats an ineffectiveness claim." *People v. Palmer*, 162 Ill. 2d 465, 475-76 (1994) (emphasis added) (citations omitted).

**Failure to Raise Issue of Trial Counsel's Ineffectiveness**

Petitioner claims that appellate counsel was ineffective for not raising the issue of trial counsel's own incompetence. Where a petitioner claims that appellate counsel was deficient for failing to raise the issue of trial counsel's ineffectiveness, the focus necessarily must be on trial counsel's performance. *People v. Johnson*, 183 Ill. 2d 176, 187 (1998); *People v. Coleman*, 168 Ill. 2d 509, 522-23 (1995). A defendant suffers no prejudice if the underlying issues are nonmeritorious. *People v. Rogers*, 197 Ill. 2d 216, 223 (2001).

As previously discussed, trial counsel's failure to: (1) investigate and interview witnesses; (2) consult with petitioner regarding trial strategy; (3) discuss police reports and take petitioner's phone calls; (4) contest petitioner's illegal arrest and statement; and (5) object to certain trial testimony does not amount to ineffectiveness. Thus, it cannot be said that appellate counsel's decision to not raise those issues constituted incompetence. Because the court has determined that the underlying claims of ineffectiveness lack support, petitioner's claims of ineffective assistance of appellate counsel likewise are without merit.

**Reasonable Doubt**

Petitioner claims appellate counsel was ineffective for failing to raise that petitioner was not proven guilty beyond a reasonable doubt. However, the evidence at trial showed that in addition to petitioner's incriminating statement denying involvement, there were four eyewitnesses to the crime. This claim would not have been a winning argument, and therefore, petitioner's claim that appellate counsel was ineffective for failing to raise it must also fail.

**TRIAL COURT ERROR**

Petitioner alleges the trial court erred by not admitting the 911 audiotapes of eyewitness Derric Clemons, who, while watching the crime in the alley, referred to the victim as a prostitute and the shooter as a drug dealer. Petitioner alleges he was prejudiced by this audiotape not being admitted into evidence. Notably, there were four eyewitnesses to the murder. Evidentiary rulings are not properly reviewed by the trial court in a post-conviction petition. As such this claim does not form a basis upon which relief can be granted and must be dismissed.

## EXCESSIVE SENTENCE

Petitioner alleges his twenty year sentence for murder with a consecutive twenty-five year sentence enhancement for personally discharging the firearm is excessive. Clearly, the propriety of the sentence imposed by the trial court is a matter premised on the trial record and, thus, could have been raised on direct appeal. *See People v. French*, 210 Ill. App. 3d 681, 688 (2nd Dist. 1991) (petitioner's sentencing issues could have been raised on direct appeal). Petitioner's failure to raise the issue on direct appeal precludes post-conviction consideration thereof. Even if the claim were not procedurally barred, petitioner's position would not be much improved. Significantly, the mere excessiveness of a sentence which was within the statutory limits when imposed does not create a constitutional issue which may serve as a basis for post-conviction relief. *People v. Ballinger*, 53 Ill. 2d 388, 390 (1973); *People v. Boyd*, 347 Ill. App. 3d 321, 331 (1st Dist. 2004).

In Illinois, the sentencing range for first degree murder, a Class X felony, is twenty to sixty years. 730 ILCS 5/5-8-1(a)(1) (West 2005). The twenty-five year to life sentence enhancement is automatically imposed by statue if the during the commission of the offense, the person personally discharged the firearm that proximately caused death to another person. 730 ILCS 5/5-8-1(d)(iii)(West 2005). Petitioner's twenty and twenty five year consecutive sentences were the bare minimum that could have been imposed based upon the jury verdict finding him guilty of the first degree murder of Doris Smith and finding that he personally discharged the firearm that proximately caused her death. This frivolous claim is denied.

## CONCLUSION

Based upon the foregoing discussion, the court further finds the issues raised and presented by petitioner are frivolous and patently without merit. Accordingly, the petition for post-conviction relief is hereby dismissed. Petitioner's request for leave to proceed *in forma pauperis* and for appointment of counsel is likewise denied.

**ENTERED:** _____

Judge James M. Obbish
Circuit Court of Cook County
Criminal Division

**DATED:** ____12-12-08____

ENTERED
JUDGE JAMES M. OBBISH-1752

DEC 12 2008

DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

14

DOROTHY BROWN
CLERK OF THE CIRCUIT COURT



Criminal Division
2650 South California Avenue
Room 526
Chicago, Illinois 60608
(773) 869-3147
FAX (773) 869-4444
www.cookcountyclerkofcourt.org



## OFFICE OF THE CLERK OF THE CIRCUIT COURT OF COOK COUNTY

February 6, 2009

Rodney Clemons #R-47384
Stateville C.C.
P.O. Box 112
Joliet, IL 60434-0112

Dear Rodney Clemons:

RE:    Case Number 01CR2333201

Please be advised that on 01/30/09, the Honorable Judge James M. Obbish denied your motion for Reconsideration of the denial of the Post-Conviction Petition.  OFF CALL.  Enclosed is an Order signed by Judge Obbish with the rulings.

If you have additional questions regarding this ruling, please contact your attorney, or the public defender.

Office of the Public Defender, Cook County
2650 South California Avenue
7th Floor
Chicago, IL 60608
(773) 869-3222

Sincerely,
**Dorothy Brown**
Clerk of the Circuit Court of Cook County, Illinois



By:_____    Deputy Clerk
CCCR EF18-2/14/2007.  Motion Denied Letter.

**MISSION STATEMENT**

The mission of the office of the Clerk of the Circuit Court of Cook County is to serve the citizens of Cook County and the participants in the judicial system in a timely, efficient and ethical manner.  All services, information and court records will be provided with courtesy and cost efficiency.

EXH-11

# IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CRIMINAL DIVISION

PEOPLE OF THE STATE OF ILLINOIS,⠀⠀)

⠀⠀⠀⠀⠀⠀⠀⠀Plaintiff-Respondent,⠀⠀)

⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀⠀Post-Conviction

⠀⠀⠀⠀⠀⠀vs.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀01-CR-23332-01

⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)

RODNEY CLEMONS,⠀⠀⠀⠀⠀⠀⠀)

⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)

⠀⠀⠀⠀⠀⠀Defendant-Petitioner.⠀⠀)



FILED

TIME⠀⠀⠀⠀⠀⠀⠀⠀⠀AM

JAN 30 2009

Judge_____

Deputy Clerk Signature

## ORDER DENYING PETITIONER LEAVE TO FILE
## SUCCESSIVE PETITION FOR POST-CONVICTION RELIEF

⠀⠀⠀⠀In this second petition for post-conviction relief, Rodney Clemons once more seeks redress from the judgment of conviction entered herein on September 16, 2005. Following a jury trial, petitioner was found guilty of committing one count of first degree murder in violation of the Illinois Criminal Code. 720 ILCS 5/9-1(A)(1) (West 2005). Petitioner was subsequently sentenced to twenty years imprisonment for the murder and a consecutive twenty-five year sentence for personally discharging the firearm. As grounds for relief, petitioner alleges that two affidavits from Natasha Smith and Andre Smith entitle him to an evidentiary hearing.

## BACKGROUND

⠀⠀⠀⠀Petitioner's conviction stems from the events of August 26, 2001. On that date, at about 1:20 a.m., petitioner arrived at his girlfriend Doris Smith's house demanding to know where she was. After learning she was not at home, he ran from the house in a rage

yelling, "[s]omebody is going to die tonight." Approximately twenty-five minutes later, four eyewitnesses heard gunshots, saw petitioner chasing Smith out of an alley and shoot Smith, and saw Smith fall to the ground. Each of the four witnesses identified petitioner in a police lineup and in court. Deputy medical examiner Michel Humilier testified Smith died from multiple gunshot wounds and the manner of death was homicide.

ASA Bronwyn Sears testified that, after advising petitioner of his *Miranda* rights, she interviewed him and he denied having anything to do with Smith's murder. Petitioner told Sears he did not know what happened to Smith in the alley, although neither Sears nor the police had mentioned the alley to him. Petitioner further told Sears that no one could have seen him on the street because there wasn't anyone there who would have been close enough to see his face, and anyone who claimed they saw him in the alley was lying. The jury found petitioner guilty of first degree murder and found that he personally discharged the firearm that caused Smith's death.

## PROCEDURAL HISTORY

A direct appeal was taken to the Illinois Appellate Court, First Judicial District, wherein petitioner contended: (1) the trial court erred when it failed to conduct an inquiry into petitioner's *pro se* allegations that trial counsel rendered ineffective assistance; (2) his mittimus should be corrected to reflect the proper number of days' credit for time served in custody. On March 31, 2008, petitioner's conviction was affirmed and the mittimus was corrected. *People v. Rodney Clemons*, No. 1-05-3290 (unpublished order under Supreme Court Rule 23). The record does not indicate whether petitioner filed leave to appeal to the Illinois Supreme Court or the United States Supreme Court.

Petitioner also sought collateral relief in a post-conviction proceeding commenced in this court on October 20, 2008. Petitioner's *pro se* petition alleged: (1) he received ineffective assistance of trial counsel who failed to: (a) investigate and interview witnesses; (b) consult with petitioner regarding trial strategy; (c) discuss police reports and take petitioner's phone calls; (d) contest petitioner's illegal arrest and statement; (e) object to certain trial testimony; (2) he received ineffective assistance of appellate counsel who failed to: (a) raise trial counsel's ineffectiveness; (b) argue that petitioner was not proven guilty beyond a reasonable doubt; (3) the trial court erred by not admitting the 911 audiotapes of an eyewitness; and (4) his sentence was excessive. However, upon due consideration, this court determined that the petition was frivolous and patently without merit. Accordingly, on December 12, 2008, the proceeding was summarily dismissed pursuant to section 122-2.1 of the Post-Conviction Hearing Act, 725 ILCS 5/122-2.1 (West 2004).

## ANALYSIS

As noted, this is petitioner's second petition for post-conviction relief. However, the Post-Conviction Hearing Act generally limits a petitioner to the filing of but one petition. *People v. Holman*, 191 Ill. 2d 204, 209, 730 N.E.2d 39, 43 (2000). Indeed, effective January 1, 2004, the legislature in its amendment to section 122-1 of the Act, 725 ILCS 5/122-1 (West 2003), mandated:

> (f) Only one petition may be filed by a petitioner under this article without leave of the court. Leave of court may be granted only if a petitioner demonstrated cause for his or her failure to bring the claim in his or her initial post-conviction proceedings and prejudice results from that failure.

Moreover, in adopting the "cause and prejudice test," subsection (f) codifies the holding of the Illinois Supreme Court in *People v. Pitsonbarger*, 205 Ill. 2d 444, 793

3

C:00285

N.E.2d 609 (2002). That is, under subsection (f)(1), a petitioner shows "cause" by identifying an objective factor that impeded his or her ability to raise a specific claim during the initial post-conviction proceedings; and, under subsection (f)(2), a petitioner shows "prejudice" by demonstrating that the absence of the claim during the initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process.

In the present case, petitioner has failed to demonstrate that the rule prohibiting successive petitions should be relaxed. Although the factual assertions relied upon by petitioner in the instant petition were available to him at the time his initial petition was filed, he has failed to identify any objective factor which impeded his efforts to raise the claim in the earlier proceedings. Petitioner does not allege that the facts underlying his present claim were withheld from him or that the claim is based upon newly discovered evidence.

*Mention Andre Page 5 Also Page 8*

In the instant matter, petitioner attaches two affidavits: from Andre Smith and from Natasha Smith. In his initial petition, petitioner mentioned Andre Smith as witness that trial counsel did not interview, but petitioner did not explain the significance of Smith's testimony. The affidavit is dated December 28, 2007. In his initial petition, petitioner did not mention Natasha Smith. Her affidavit is dated March 15, 2007. Petitioner states no reason why both affidavits were not included in the first post-conviction petition. *See Post-page-20-24 it-there*

It is further apparent that petitioner has failed to demonstrate that any prejudice inured from the failure to assert this claim earlier. Had this claim been presented in the initial petition, there is scant probability that petitioner would have prevailed. Thus,

4



petitioner makes no showing that the absence of the claim now presented so infected the trial that his resulting conviction or sentence violated due process.

**CONCLUSION**

Based upon the foregoing discussion, the court finds that petitioner has failed to satisfy the cause and prejudice test set forth by the legislature. Accordingly, leave to file the instant petition is hereby denied. Likewise, petitioner's motion for leave to proceed *in forma pauperis* and for appointment of counsel is denied.

ENTERED: _____

Judge James M. Obbish
Circuit Court of Cook County
Criminal Division

DATE: _1 - 30 - 09_

> ENTERED
> JUDGE JAMES M. OBBISH-1752
>
> JAN 30 2009
>
> DOROTHY BROWN
> CLERK OF THE CIRCUIT COURT
> OF COOK COUNTY, IL
> DEPUTY CLERK

No. 1-09-0737

**NOTICE**
The text of this order may be changed or corrected prior to the time for filing of a Petition for Rehearing or the disposition of the same.

FIFTH DIVISION
May 13, 2011

No. 1-09-0737

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Respondent-Appellee, | ) | Cook County, Illinois. |
| | ) | |
| | ) | |
| | ) | No. 01 CR 23332 |
| v. | ) | |
| | ) | |
| RODNEY CLEMONS, | ) | Honorable |
| | ) | James Michael Obbish, |
| Petitioner-Appellant. | ) | Judge Presiding. |

JUSTICE JOSEPH GORDON delivered the judgment of the court.

Presiding Justice Fitzgerald Smith and Justice Howse concurred in the judgment.

**ORDER**

*Held*: In post-conviction proceedings, defendant forfeited his claim of ineffective

assistance of appellate counsel where he failed to raise such a claim in his initial

post-conviction petition.

Defendant Rodney Clemons was convicted of first degree murder, and his conviction was

affirmed on direct appeal. Defendant's subsequent post-conviction petition was summarily

dismissed, and he now appeals from the denial of his motion for leave to file a successive

petition for relief under the Post-Conviction Hearing Act, 725 ILCS 5/122-1 et. seq. (West

No. 1-09-0737

2010). Defendant contends that the circuit court erred in denying his motion because he

presented a non-frivolous claim of ineffective assistance of appellate counsel based on that

counsel's failure to argue on direct appeal that the circuit court erred in refusing to admit

evidence that the victim may have worked as a prostitute. For the reasons that follow, we affirm

the judgment of the circuit court.

BACKGROUND

The record shows that defendant was charged with first degree murder for the fatal

shooting of Doris Smith. At the close of defendant's trial, the jury found him guilty, and the trial

court sentenced him to 20 years' imprisonment in the Illinois Department of Corrections on the

murder conviction and an additional consecutive term of 25 years' imprisonment for personally

discharging a firearm during the commission of the murder.

The record shows that during defendant's trial, the State presented the identification

testimony of Derric Clemmons[1], Marie Jackson, Natalie Jones and Lionel Powe. Each of those

witnesses testified that on the night of the murder, they observed a man shoot Doris on the corner

of 81st Street and Houston, and later picked defendant out of a line-up as Doris' shooter. Each of

those witnesses testified that on August 26, 2001, at or about 2:00 am, they heard gunshots and

saw Doris running out of a alley as defendant chased her. Derric testified that he heard more

gunshots before he went outside and saw Doris lying face down in a pool of blood. Marie

Jackson, Natalie Jones and Lionel Powe each testified that they saw defendant pull out a gun and

_____

[1]Nothing in the record appears to indicate any familial relationship between defendant
and Derric Clemmons.

-2-

No. 1-09-0737

shoot Doris.

Also introduced at defendant's trial was the testimony of Doris Smith's daughter, Natasha Smith, who stated that defendant and her mother had been in an abusive off-and-on relationship, which her mother had tried to break off. Natasha further testified that at or about 1:25 to 1:30 am on the night of the murder, defendant came to her house looking for Doris. According to Natasha, defendant became enraged when she told him that her mother was not home, and as he left, defendant stated that "somebody is going to die tonight."

In addition, the State presented the testimony of Dr. Michel Humilier, a Cook County deputy medical examiner and expert in forensic pathology. Dr. Humilier testified that he reviewed the internal autopsy performed on Doris, which indicated that Doris had been shot in two different places: her front hip and her upper back just beneath her head. According to Dr. Humilier, Doris' gunshot wounds were consistent with her ducking and turning her back to the person firing the gun.

Further, Detective Aaron Chatman testified that at approximately 2:00 am on the night in question, he was assigned to investigate the shooting at 81st Street and Houston. According to the detective, when he arrived at the scene, the victim had already been taken away, and at that time, he examined the evidence, "conducted a canvass of the area" and interviewed Derric and Marie. While at the scene, Detective Chatman found a "legal document" inside the victim's purse which contained that victim's name, Doris Smith, and defendant's name, Rodney Clemons.

At pre-trial hearings, the parties acknowledged that the legal document found in Doris' purse was an order of protection against defendant. At one of those hearings, the State

No. 1-09-0737

acknowledged that the order of protection had been granted ex parte, and that no evidence indicated that defendant had notice of that order.

The record further shows that defense counsel attempted to admit into evidence the audiotape of Derric's 911 phone call, which he made on the night in question. Defense counsel sought to admit a portion of the audiotape in which Derric gave defendant's description to the operator, which according to defense counsel, did not exactly match defendant. More notably however, defense counsel sought to admit the portion of the audiotape where Derric stated that the person who was being shot was a prostitute. Defense counsel stated that he wanted the jury to hear that portion of Derric's 911 call to support its theory that the victim was shot by a "john" during a misunderstanding. In addition, defense counsel stated to the court that he could call witnesses who would testify that the victim was engaged in prostitution to support her drug habit. After the trial court ascertained from Derric that he was, in fact, the caller on the audiotape, it allowed defense counsel to ask Derric about the description of the shooter which he gave in his phone call, but not his statement that the victim of the shooting was a prostitute. In doing so, the trial court found that Derric's description of the victim as a prostitute was speculative and improper.

Additionally, defense counsel attempted to introduce testimony from Victor Latiker that on more than one occasion he had given money to the victim in exchange for sexual favors, and that on other occasions, he observed the victim, while at crack houses, take money from other men and go "upstairs" with them for about five minutes. Defense counsel told the trial court that such testimony lends credence that Derric was not speculating when he described the victim as a

-4-

No. 1-09-0737

prostitute in his 911 call, and therefore, that portion of the audiotape should be admitted into evidence. The court, nevertheless, still did not allow the audiotape of Derric's 911 call to be admitted into evidence, noting that, irrespective of Latiker's testimony, Derric did not testify to seeing a sex act by the victim, money exchanging hands, or anything of the sort which would give him an opportunity to speculate that she was a prostitute.

After defendant's conviction, this court affirmed that judgment on direct appeal, over defendant's claims that the trial court erred when it failed to conduct an inquiry into his alleged *pro se* posttrial claim that trial counsel rendered ineffective assistance. *People v. Clemons*, No. 1-05-3290 (2008) (unpublished opinion under Supreme Court Rule 23). On October 20, 2008, defendant filed a *pro se* post-conviction petition alleging, *inter alia*, that the trial court erred in excluding from the evidence the 911 audiotape of an eyewitness, and that he received ineffective assistance from both trial and appellate counsel. Specifically, defendant alleged, in a section titled "911 tape phone call," that the trial court committed reversible error in not admitting the 911 audiotape of Derric Clemmons, in which he states that a "prostitute" was being shot at an alley, and that the "appellate review did not raise any issue that was preserved for review by defendant." Defendant claimed that the court erred in stating that the witness' statement characterizing the victim was a prostitute was speculative because defendant offered testimony from a man named Victor Latiker, who would lay the foundation for that statement.

In addition, defendant alleged in a separate section titled "trial counsel's ineffective assistance," that his trial counsel was ineffective in failing to investigate and interview certain witnesses, consult with defendant regarding trial strategy, discuss police reports with defendant,

-5-

No. 1-09-0737

take defendant's phone calls, contest defendant's arrest and statement, and object to certain trial

testimony. Defendant further alleged, in another separate section titled "ineffective assistance of

appellate counsel" that he received ineffective assistance of appellate counsel who failed to raise

trial counsel's ineffectiveness, argue that defendant was not proven guilty beyond a reasonable

doubt, and raise additional claims which defendant suggested through his correspondence.

Attached to defendant's *pro se* petition were numerous pieces of correspondence between

defendant and his appellate attorney, in which defendant asks his attorney to raise the following

issues: (1) the testimony of the forensic medical examiner is inconsistent with the testimony of

eyewitnesses who testified at trial; (2) the State violated the ruling on a motion in limine by

referring to an order of protection entered against defendant; (3) admission of hearsay testimony

by the victim's daughter, Natasha Smith; (4) defendant's testimony was "ignored;" (5) four of the

trial witnesses committed perjury; and (6) ineffective assistance of trial counsel. Additionally,

defendant asked his appellate attorney to explain to him what an "appeal bond" is. Notably,

nowhere in the attached correspondence did defendant refer to the trial court's exclusion of

evidence that the victim, Smith, may have worked as a prostitute.

Also attached to defendant's post-conviction petition was the transcript of the court

proceedings in which defense counsel attempted to introduce Latiker's testimony with respect to

Doris' alleged acts of prostitution. That transcript reflects the previously mentioned exchange, in

which defense counsel stated that Latiker would testify that he had given the victim money in

exchange for sex on more than one occasion, and had observed the victim take money from men

and disappear with them while at crack houses.

No. 1-09-0737

In addition, it appears that defendant attached to one of the filed copies of his post-conviction petition the affidavits of Andre Smith, who appears to have no relation to the victim, and Natasha Smith. In Natasha Smith's affidavit, she stated, in relevant part, that she was recanting her prior testimony, and that the statements that she made to a detective on the night of the murder was "changed" by that detective. She further stated that on the night of the murder, she told Detective Chatman that defendant was at her residence earlier that night and that what defendant actually said to her was that there was a lot of shooting outside and somebody was going to die. According to Natasha, defendant was concerned about the whereabouts of her mother. Natasha's affidavit further stated, however, that Detective Chatman "changed" her statement to say that defendant was enraged when she saw him, that he stormed out of the building and that he said that he was going to kill someone. However, Natasha does not explain in her affidavit whether Detective Chatman changed her statement in his written report, his testimony regarding her statement, or in any other medium. In addition, Natasha stated in her affidavit that she later changed her original statement at trial in order to secure a conviction because she was "confused." Further, Natasha averred that Detective Chatman did not write down in his reports the description that she gave of defendant's clothing and facial hair.

In Andre Smith's affidavit, he stated that he was with defendant until after 2:00 am on the night of the murder, which, according to the evidence presented at trial, took place at about 1:54 am. According to Andre, he drove defendant to his girlfriend Priscilla King's house shortly after 1:00 am that night. He further stated that after a few minutes at King's house, he and defendant went to meet with someone named "Jamaca" on Exchange Street, then walked to the victim's

-7-

No. 1-09-0737

house. According to Andre, he waited for defendant outside of the victim's building while defendant went inside for a few minutes, and then both men returned to King's house. In addition, Andre averred that he and defendant talked for some time in front of King's house until just after 2:00, at which time defendant went inside to go to bed.

On December 12, 2008, the circuit court dismissed defendant's post-conviction petition as frivolous and patently without merit. In doing so, the circuit court found that defendant's claims that he received ineffective assistance of both trial and appellate counsel are without merit. The circuit court further held that defendant's claim that the trial court erred in not admitting the 911 audiotapes of eyewitness Derric Clemmons does not provide a basis upon which relief can be granted, in part because "[e]videntiary rulings are not properly reviewed by the trial court in a post-conviction petition."

Defendant then filed, *pro se*, a document titled "motion for reconsideration of post-conviction." In that motion, defendant alleged that the circuit court should reconsider its dismissal of his post-conviction petition because the affidavits of Natasha Smith and Andre Smith are newly discovered evidence, and he was therefore entitled to an evidentiary hearing. Attached to that motion were copies of the affidavits of Natasha Smith and Andre Smith, which were previously attached to defendant's pro se post-conviction petition.

On January 30, 2009, the circuit court, treating defendant's motion to reconsider as a motion for leave to file a successive petition for post-conviction relief, denied the motion. In doing so, the court found that defendant had failed to demonstrate any prejudice inured from his failure to assert his claims in his initial post-conviction petition. The court noted that in his

-8-

No. 1-09-0737

initial petition, defendant did not mention Natasha Smith, and referred to Andre Smith only as a

witness that trial counsel did not interview.  In addition, the court noted that had these claims

been presented in defendant's initial petition, there is little probability that defendant would have

prevailed.  We note that while the circuit court stated in its written order that defendant failed to

attach the affidavits of Andre Smith and Natasha Smith to his first post-conviction petition, the

record before us contains two copies of defendant's post-conviction petition and that the

affidavits are only attached to one of those copies.  However, this inconsistency does not affect

the outcome of this appeal.

ANALYSIS

On appeal, defendant does not challenge the circuit court's denial of his "motion for

reconsideration," and contends only that the circuit court erred in dismissing his initial post-

conviction petition as frivolous and patently without merit.  He contends that his claim that his

appellate counsel was ineffective for failing to argue on direct appeal that the trial court erred in

excluding evidence that the victim worked as a prostitute had an arguable basis in both law and

fact, as required to survive summary dismissal.  According to defendant, the circuit court erred in

dismissing his petition with respect to his claim regarding Derric's 911 phone call because it

characterized it as a challenge to an evidentiary ruling, which does not present a constitutional

claim as required for relief under the Act.  See e.g. *People v. Cox*, 34 Ill. 2d 66, 68 (1966);

*People v. Vitale*, 3 Ill. 2d 99, 106 (1954).  Consequently, defendant argues that the circuit court

failed to recognize that defendant raised that claim in the framework of ineffective assistance of

appellate counsel, for failure to raise that evidentiary challenge on direct appeal, where that issue

-9-

No. 1-09-0737

could have been reviewed. Thus, defendant maintains that we should reverse the dismissal of his petition and remand his cause for further post-conviction proceedings.

The purpose of the Illinois Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2008)), under which the instant petition is brought, is to allow courts to resolve contentions regarding constitutional violations at trial that have not been, and could not have been, previously adjudicated. *People v. Evans*, 186 Ill. 2d 83, 89 (1999). Proceedings brought under the Act are commenced by filing a petition in the court in which the conviction occurred, supported by affidavit. 725 ILCS 5/122-1(b) (West 2008). Defendant is also required to set forth the manner in which his rights were violated, supported by affidavit, records or other evidence. 725 ILCS 5/122-2 (West 2008).

At the first stage of proceedings, defendant must present the gist of a constitutional claim to survive dismissal. At that stage, the circuit court independently reviews the petition within 90 days of its filing and must summarily dismiss the petition if it is frivolous or patently without merit. 725 ILCS 5/122-2.1(a)(2) (West 2008). A petition will be found frivolous and patently without merit when defendant fails to articulate the gist of a constitutional claim, such that the allegations in the petition, taken as true and liberally construed, have no basis in law or in fact. *People v. Hodges*, 234 Ill. 2d 1, 16 (2009). Conversely, if defendant does, in fact, present the gist of a constitutional claim, it advances to the next stage, where the circuit court will conduct an evidentiary hearing on its allegations. *People v. Edwards*, 197 Ill. 2d 239, 245-56 (2001). To meet that requirement and survive dismissal, defendant needs only present a modest amount of detail and does not need to make legal arguments or cite to legal authority. *People v. Gaultney*,

-10-

No. 1-09-0737

174 Ill. 2d 410, 418 (1996).

    In this case, the circuit court dismissed defendant's petition at the first stage of proceedings, and the issue before us is whether he articulated in his pro se petition the gist of a constitutional claim so as to survive first-stage dismissal. See *Edwards*, 197 Ill. 2d at 244. At this stage of proceedings, since defendant has not been yet afforded an evidentiary hearing, we are to take all well-pled allegations in the petition as true and liberally construe them in favor of defendant. See *People v. Coleman*, 183 Ill. 2d 366, 380-81 (1998) (discussing the standard of review for dismissal hearings under section 122-2.1). The question of whether the circuit court erred in summarily dismissing a post-conviction petition is reviewed *de novo*. *Coleman*, 183 Ill. 2d at 388-89.

    Defendant contends that he raised, in his post-conviction petition, a claim of ineffective assistance of appellate counsel for failing to argue on direct appeal that the trial court erred by not admitting evidence that the victim was working as a prostitute on the night when she was shot. He maintains that the evidence that he sought to admit at trial substantiated defendant's allegation that the victim worked as a prostitute, which was a significant component of his theory of defense, which was that defendant was misidentified as the shooter, who was in fact, one of the victim's "clients." According to defendant, the trial court erred in excluding the evidence on the basis that it was speculative, because defendant's proposed evidence included Latiker's testimony that he had paid the victim for sex on more than one occasion, and that he had observed the victim receive money from men and disappear with them for a period of time. Defendant argues that appellate counsel was ineffective for not challenging the trial court's

-11-

No. 1-09-0737

refusal to admit the audiotape of Derric's 911 call and Latiker's testimony regarding Doris'

alleged prostitution because that exclusion was an error. Accordingly, defendant maintains that

his post-conviction claim asserting such ineffectiveness had an arguable basis of law and fact.

The State responds that defendant's claim in his post-conviction petition in regard to the

admission of testimony and audiotapes was only an evidentiary challenge, which is not a

constitutional claim for which relief can be granted in a post-conviction proceeding. See *Cox*,

34 Ill. 2d at 68; *Vitale*, 3 Ill. 2d at 106. The State maintains that defendant's challenge of the trial

court's refusal to admit that evidence was not raised in the framework of ineffective assistance of

appellate counsel, which, unlike a challenge to an evidentiary ruling, may be a claim of a

constitutional violation properly raised in a post-conviction petition. Accordingly, the State

argues that defendant's present claim that his appellate counsel was ineffective for not

challenging the exclusion of that evidence on direct appeal was not raised in defendant's post-

conviction petition, and is now forfeited.

Although allegations made in a pro se post-conviction petition are to be liberally

construed (*Hodges*, 234 Ill. 2d at 20), the Act provides that "[a]ny claims of a substantial denial

of constitutional rights not raised in an original or amended petition is waived." 725 ILCS

5/122-3 (West 2009). In fact, since this court does not have the powers enjoyed by our supreme

court, we cannot reach post-conviction claims that were not raised in the initial petition. *People*

*v. Jones*, 213 Ill. 2d 498, 507 (2004).

In *Jones*, 213 Ill. 2d at 499, defendant pleaded guilty to attempted first degree murder in

exchange for a prison term of 20 years. He later filed a *pro se* post-conviction petition, which

-12-

No. 1-09-0737

*Jones - cite as 274 Ill. Dec. 707; 791 N.Ed 1118 (Ill. App. 1 Dist. 2003)* [handwritten]

was dismissed as frivolous and patently without merit, and this court affirmed. *People v. Jones*, 341 Ill. App. 3d 103, 107-08 (2003). The supreme court granted defendant leave to appeal, and noted that the case presented the issue of whether defendant could raise for the first time on appeal the issue of improper admonishments, where he had failed to raise it in his post-conviction petition. *Jones*, 213 Ill. 2d 506-07. The court held that, as provided by section 122-3 of the Act, the appellate court is not free to excuse, in the context of post-conviction proceedings, the forfeiture of a claim caused by defendant's failure to include issues in his post-conviction petition. *Jones*, 213 Ill. 2d at 508.

In fact, the court noted that this conclusion is not changed by the fact that *pro se* litigants are often unable to draft post-conviction petitions which meet the requirements to survive dismissal at the first stage. *Jones*, 213 Ill. 2d at 504. The supreme court noted that

"Stated bluntly, the typical pro se litigant will draft an inartful pleading

which does not survive scrutiny under the "frivolity/patently without merit"

standard of section 122-2.1, and it is only during the appellate process, when the

discerning eyes of an attorney are reviewing the record, that the more complex

errors that a nonattorney cannot glean are discovered. The appellate attorney, not

wishing to be remiss of his or her duty, then adds the newly discovered error to the

appeal despite the fact that the claim was never considered by the trial court in the

course of its ruling. The thought process behind the attorney's actions is clear - the

attorney is zealously guarding the client's rights and is attempting to conserve

judicial resources by raising the claim expeditiously at the first chance available.

-13-

No. 1-09-0737

These goals are laudable, but they nonetheless conflict with the nature of the appellate review and the scriptures of the Act." *Jones*, 213 Ill. 2d at 504-05; accord *People v. Jolly*, 374 Ill. App. 3d 499, 505 (2007) (finding that defendant's claim of ineffectiveness of his postplea counsel had been forfeited where " 'even a liberal reading' of defendant's post-conviction petition reveal[ed] no claim of ineffectiveness by [postplea counsel]."

Here, defendant's *pro se* post-conviction petition contains a section titled "911-tape-phone-call" which specifically states that "[t]he single issue before this court is whether the trial court committed reversible error when it denied the defendant the opportunity to play the audiotape recorded statement before the court."  Although defendant's petition stated in that section that "the appellate review did not raise any issue that was preserved for review by [d]efendant ***," it makes no mention of appellate counsel's role in the proceeding, or suggest that she was ineffective for not raising that issue on direct appeal.  Additionally, although defendant's *pro se* petition also includes a section titled "ineffective assistance of appellate counsel," it is clear that it is a separate claim from the section titled "911-tape-phone-call."  In fact, nowhere in defendant's ineffective assistance of appellate counsel claim is there any mention of that attorney's failure to raise the issue of whether the trial court properly excluded the audiotape of Derric's 911 call or any part of Latiker's testimony.  While defendant claimed in his *pro se* petition that his appellate counsel was ineffective for not raising the issues which he asked her to raise on direct appeal, his references to those issues in his petition make no mention of the trial court's ruling in excluding the Derric's 911 call or Latiker's testimony regarding

-14-

No. 1-09-0737

Doris' alleged prostitution.[2]  Moreover, none of the attached correspondence between defendant

and his appellate counsel, in which he listed the issues that he wanted his counsel to raise,  makes

any reference to the trial court's refusal to admit such evidence of the victim's alleged

prostitution.

      Although defendant contends in his reply brief that he did, in fact, raise the claim that his

appellate counsel was ineffective for not challenging the trial court's evidentiary ruling by

claiming in his petition that "the appellate review did not raise any issue that was preserved for

review by [d]efendant ***," such a contention lacks merit.  As previously noted, that remark

makes no mention of appellate counsel's role, or any alleged shortcomings, in those proceedings.

A court considering a post-conviction petition is not required to infer allegations that were not

made.  *People v. Mackins*, 222 Ill. App. 3d 1063, 1067 (1991).  In *Mackins*, 222 Ill. App. 3d at

1066, defendant filed a petition for relief from judgment pursuant to section 2-1401 of the

Illinois Code of Civil Procedure, in which he contended that the police officers who testified at

his trial committed perjury, and pointed to inconsistencies in their testimony.  On appeal from the

trial court's dismissal of that petition, defendant argued, *inter alia*, that his petition should have

been considered pursuant to the Act because it " 'unequivocally raised the inference' " that his

trial attorney was ineffective for not impeaching the police officers based on the inconsistencies

---

[2]As previously discussed, those issues are: failure to argue that defendant was not proven guilty beyond a reasonable doubt, and raise additional claims which defendant suggested through his correspondence. Such claims included: (1) inconsistency between the testimony of the forensic medical examiner and the eyewitnesses'; (2) the State's alleged violation of a ruling in limine by referring to an order of protection; (3) admission of hearsay testimony by Natasha Smith; (4) defendant's testimony was "ignored;" (5) trial witnesses' alleged perjury; and (6) ineffective assistance of trial counsel.

No. 1-09-0737

in their testimony. *Mackins*, 222 Ill. App. 3d at 1067. In affirming the trial court's dismissal, the court found that even if that petition had been brought under the Act, it would have been properly dismissed because it nowhere alleged ineffective assistance of counsel and it was "obvious" that the trial court was not required to " 'infer' " an allegation that was not made.

As previously noted, it is clear from the petition's language that "the single issue" in that section is whether the trial court erred in excluding that evidence. The conclusion that defendant's claim that the trial court erred in excluding evidence of the victim's alleged prostitution was not framed in terms of ineffective assistance of counsel is further supported by the fact that defendant made a separate claim of ineffective assistance of appellate counsel which did not refer to counsel's failure to raise that issue on direct appeal. Thus, even a liberal reading of defendant's post-conviction petition does not reveal a claim that his appellate counsel was ineffective for failing to raise the issue of whether the trial court properly excluded the audiotape of Derric's 911 call, or any other evidence that the victim engaged in acts of prostitution. Accordingly, we conclude that defendant has forfeited the claim that his appellate counsel was ineffective for failing to challenge the trial court's exclusion of evidence referring to the victim's alleged acts of prostitution. *Jolly*, 374 Ill. App. 3d at 505.

Therefore, for the foregoing reasons, the circuit court's dismissal of defendant's post-conviction petition is affirmed.

Affirmed.

FITZGERALD SMITH, P.J., and HOWSE, J., concur.

-16-